WESLEY PEARCE, APPELLEE, V. ELIC CORPORATION, A
NEBRASKA CORPORATION, APPELLANT.
329 N.W.2d 74

Filed December 30, 1982.   No. 44460.

Jeffrey A. Silver, for appellant.

Sutter & Olson, for appellee.

BOSLAUGH, McCOWN, CLINTON, and WHITE, JJ., and
BRODKEY, J., Retired.

BRODKEY, J., Retired.
Defendant below, ELIC Corporation (hereinafter referred to as ELIC), has appealed to this court from a judgment entered against it by the District Court for Lancaster County, Nebraska, in an action

brought against the defendant by the plaintiff, Wesley Pearce, to recover certain "overwrite" commissions alleged to be due him by defendant. The case was tried to a jury, which returned a verdict in favor of Pearce in the amount of $7,832.57, and which also returned a verdict in favor of Pearce and against ELIC on ELIC's cross-petition. The trial judge subsequently reduced the judgment to $7,174, and this appeal followed. We affirm.

It appears from the record that plaintiff was engaged as a general agent for D.I.S. Corporation (hereinafter referred to as D.I.S.) under an agreement dated April 1, 1977, he having been associated prior to that time with that corporation since 1970. D.I.S. at that time was engaged in the marketing of credit life and credit accident and health insurance programs for various insurance companies, and D.I.S. received a commission based on premiums received from such insurance companies. Under the agreement of April 1, 1977, Pearce was engaged by D.I.S. to solicit participants in the company's insurance programs; to provide advisory services in connection with the operation of the company's insurance programs; to distribute materials and printed supplies for the conduct of the company's insurance programs; and to make reports and receive and remit funds to the company collected in connection with the company's insurance programs. D.I.S. was a marketing arm for Empire Life Insurance Company and Great Plains Insurance Company. By virtue of an exchange of stock, D.I.S. was merged into a holding company, ELIC, the defendant herein, in 1979, and D.I.S. was dissolved. Mr. Anthony J. Bianchi testified that he was president of ELIC, was also president of Great Plains Insurance Company and Empire Life Insurance Company, which were "all underneath the ELIC umbrella," and was also president of D.I.S.

In the early part of 1978 Great Plains Insurance Company commenced writing a new type of insur-

ance policy of mechanical breakdown insurance which would, in effect, continue the warranty on an automobile and protect it from damage resulting from a mechanical breakdown. This type of insurance was also known and referred to as VIP. At that time D.I.S. was the marketing arm for the insurance for Great Plains.

On July 21, 1978, Pearce and D.I.S. entered into an addendum to the April 1, 1977, agreement previously referred to, which provided, among other things, that in addition to his other commission income Pearce was to receive "an overwrite ('Overwrite') equal to 5% of gross premiums received on Great Plains Insurance Co., Inc. automobile Mechanical Breakdown Program (herein called 'Mechanical Program') written through those automobile dealers delineated in Exhibit 'A' to this Agreement, as of March 1, 1978. However, as a condition precedent to Pearce's receipt of the Overwrite, Pearce must produce net premium (after cancellations) from the sale of credit life insurance and credit accident and health insurance in excess of $67,500.00 per month, which figure is hereinafter referred to as 'Overwrite Quota.' The Overwrite Quota must be satisfied by July 30, 1979 (on business to be reported in August, 1979) in order for Pearce to be eligible for the Overwrite. Company shall deposit the Overwrite in a commercial bank, the choice of which shall be at Company's discretion, as long as said commercial bank is in Omaha, Nebraska. The Overwrite shall be payable to Pearce commencing August 20, 1979, and each month thereafter provided Pearce satisfies the Overwrite Quota. In other words, it is the intention of the parties that if Pearce does not satisfy the Overwrite Quota, he shall not be entitled to receive the Overwrite."

In his petition filed in the District Court for Lancaster County, plaintiff alleged, among other things, that ELIC was the owner of all outstanding stock of D.I.S., a Nebraska corporation, and alleged the

agreement of July 21, 1978, between plaintiff and D.I.S., and the terms thereof; further alleged that subsequent to the execution of the addendum, the defendant waived the condition precedent and paid plaintiff for "overwrite" commissions for 1978 and, further, acknowledged indebtedness to the plaintiff for such commissions for 1979, both orally and in writing, and that the plaintiff had received his 5 percent "overwrite" commissions for 1978 but that the defendant refused to pay plaintiff the overwrite commissions for the calendar year 1979 in the amount of $7,174, although requested to do so; and prayed for judgment against the defendant for that amount.

In its answer filed to plaintiff's petition, defendant generally denied the allegations of such petition and alleged that any payment for "overwrite" commissions for 1978 was an "advance," pending a determination of whether plaintiff would satisfy the "overwrite quota," and further alleged that plaintiff had failed to satisfy the "overwrite quota" for 1979 and was therefore not entitled to receive commissions thereon. Defendant also filed a cross-petition in which it alleged that on May 15, 1979, plaintiff was paid an advance "overwrite" commission of $4,610.52, but that at no time during 1979 did plaintiff satisfy the "overwrite quota"; that defendant had made demand upon the plaintiff for the repayment of such "advances," but that plaintiff had failed and refused to pay said amount; and prayed for judgment against the plaintiff for $4,610.52.

In his reply to defendant's answer, plaintiff denied that the payment of the "overwrite" commission by defendant to plaintiff for 1978 was an "advance," as claimed by the defendant, but that it was paid for services rendered by the plaintiff and said payment constituted a waiver of the condition precedent contained in the addendum, and further alleged that the defendant had acknowledged indebtedness to the plaintiff for the "overwrite" commission for 1979 and had thereby waived the condition precedent.

For answer to defendant's cross-petition plaintiff further denied that the "overwrite" commission in the sum of $4,610.62 was an "advance."

As previously stated, the jury found for the plaintiff both on his petition and also for the plaintiff on defendant's cross-petition.

As stated in defendant's brief on appeal, the issue tried in the court below was whether ELIC waived the condition precedent of the "overwrite quota" and, if so, the amount, if any, of the damages to Pearce resulting therefrom, in addition to whether the amount previously paid to Pearce was an advance and his responsibility to repay said amount. In its assignments of error, defendant contends that the trial court erred in failing to find as a matter of law that the condition precedent in the addendum could not be waived; that the court also erred in allowing testimony to be adduced with reference to negotiations for the purchase of Pearce's insurance agency, in violation of ELIC's motion in limine, which, incidentally, was never formally ruled upon by the court; and also that the court erred in permitting parol evidence with respect to negotiations leading up to the execution of the addendum.

A large number of exhibits were offered and received in evidence in the case. These consisted largely of correspondence between the plaintiff and Anthony J. Bianchi, the president of the various companies previously referred to; and even without the benefit of supporting testimony of the witnesses who testified at the trial, they are most persuasive, are sufficient to support the verdict of the jury and the judgment entered thereon by the trial court, are sufficient to establish a waiver of the condition precedent contained in the addendum with reference to the "overwrite quota," and also are sufficient to establish a subsequent modification of that agreement. We review the pertinent documentary evidence adduced at the trial.

Under date of September 14, 1978, D.I.S. wrote

plaintiff a letter stating: "Enclosed please find a photo copy of the savings account we opened on your behalf. This $2,738.00 represents the V.I.P. Commissions thru August according to the Adendum [sic] dated July 21, 1978.

"If you have any questions on this, please let me know."

Under date of May 15, 1979, Mr. Bianchi wrote plaintiff, on ELIC stationery, as follows: "Wes, here is your VIP commission on all business dated through 12/31/78. This check also includes interest accrued as of this date of 5/15/79.

"*We will still owe you for business production in 1979* and you'll please have to wait til I return to set up the payment.

"Marlene tells me you have been given production sheets through 12/31/78." (Emphasis supplied.)

Next, on July 27, 1979, Mr. Bianchi wrote plaintiff, also on ELIC stationery, stating, among other things, as follows: "So, the bottom line is that effective August 1, we are terminating our Agency Agreement with you. The contract calls for a 90 day notice and so this allows you three months to line up other companies and switch the business." In a letter to plaintiff, dated August 2, 1979, on ELIC stationery, Mr. Bianchi stated, among other things, as follows: "Just for the record, this is to rescind the termination letter dated July 27, 1979. However, as we discussed, it now looks as though we will terminate as of January 1, 1980 with a 90-day notice to you in the latter part of September. . . . *It looks like your dealers have produced VIP this year to June 1st of $60,161 and I will be sending you a check accordingly in the next couple of days.*" (Emphasis supplied.)

Then, on August 17, 1979, Mr. Bianchi wrote a letter to plaintiff, on Empire Life Insurance Company stationery, stating: *"The check to you for the override [sic] on the V.I.P. business will be forthcoming.* We find though that we will need you to sign a new contract or assignment since the old contract is with

D.I.S. . We will be in contact with you when the assignment is ready for your signature.

"Thank you for your patience." (Emphasis supplied.)

In the next letter from Mr. Bianchi to plaintiff, under date of September 27, 1979, also on ELIC stationery, after informing Mr. Pearce that he will give him formal notice of termination on or about October 1, 1979, which will bring about a termination date of January 1, 1980, Bianchi further states: "Let me correct your September 13th letter on one point. *We are not offering to buy your agency as compensation for the termination. We are just offering to buy your agency if it would be a help to you on January 1, 1980.* I understood that you wanted to consider going into another business. If so, we were giving you a possible way to sell your agency." (Emphasis supplied.)

The above language becomes material in connection with the claim of defendant's counsel that during trial the court erred in permitting evidence of the offer to purchase the business as being an offer to compromise or settle a claim. Then, on September 28, 1979, Mr. Bianchi wrote the plaintiff two separate letters, one being on Great Plains Insurance Company stationery and the other on Empire Life Insurance Company stationery, each letter advising Pearce of the company's intention to terminate his agreement with it effective 90 days from that date. Finally, under date of July 14, 1980, a statement was sent to Mr. Pearce, apparently for the first time, for a refund of the moneys previously "advanced" to him as "overwrite" commission, as follows: "Amount due ELIC Corporation as advances on Great Plains Insurance Co., Inc. 'overwrite' commission: $4,610.52."

We also note that in a letter written on D.I.S. stationery, dated July 21, 1978, Mr. Bianchi states, among other things, as follows: "Now, Wes, let me put something down very clearly. You mention that

the 5% overwrite on Mechanical Breakdown is 'due me'. We do not feel this way, we do not feel that we owe you this in any way. We can discuss this at length but our decision is irrevocable.''

There is also in the record testimony of Mr. Pearce and his wife to the effect that between Christmas of 1978 and January of 1979, at a social party at the home of Mr. Bianchi, a discussion was had between plaintiff and Mr. Bianchi with reference to ELIC buying out D.I.S., among other matters. We quote verbatim from the record: ''And the third conversation that we talked about was the V.I.P., and I said, 'Do you mean things are going to get better? Isn't it about time I started getting paid for the Mechanical Breakdown that we've installed and I've been servicing?' And he said, 'Yes, after the first of the year I'll get ahold of the accounting people and we'll bring the figures up to date and we'll start paying you on a regular basis for the V.I.P.' '' Plaintiff also denied in his testimony that Mr. Bianchi had at any time ever told him that such pay was to be an ''advance.'' Plaintiff's testimony was substantiated in every respect by the testimony of his wife, and their testimony was before the jury at the trial. We believe that the evidence in the record was sufficient to justify the jury in concluding that the defendant waived the precondition of the ''overwrite quota,'' both expressly and also by its actions in the payment of the commissions due for 1978 to the plaintiff, which were accepted by him.

The following well-established rules of law are applicable to the facts of the instant case. A written contract may be waived in whole or in part, either directly or inferentially, and the waiver may be proved by express declarations manifesting the intent not to claim the advantage, or by so neglecting and failing to act as to induce the belief that it was the intention to waive. *Advance-Rumely Thresher Co. v. Bartzat,* 114 Neb. 35, 206 N.W. 7 (1925); *Alpirn v. H. Epstein & Son,* 138 Neb. 311, 293 N.W. 103

(1940); *Wolf v. Tastee Freez Corp.,* 172 Neb. 430, 109 N.W.2d 733 (1961); 17 Am. Jur. 2d *Contracts* §§ 390 and 392 (1964); 17A C.J.S. *Contracts* §§ 491 and 492(1) (1963). Even conditions precedent in a contract may be waived. 17A C.J.S., *supra* § 491; 17 Am. Jur. 2d, *supra* § 392. Even a provision in a written contract that a waiver of the conditions and terms of the agreement must be in writing may be waived by acts or conduct. 17A C.J.S., *supra* § 492(1); *Bettelheim v. Hagstrom Food Stores,* 113 Cal. App. 2d 873, 249 P.2d 301 (1952); *Boston Insurance Co. v. Barnes,* 120 Ga. App. 585, 171 S.E.2d 626 (1969). The general rule is that the assertion of the invalidity of a contract is nullified by the subsequent acceptance of benefits growing out of the contract claimed to have been breached. *McLeod v. Crawford,* 176 Neb. 513, 126 N.W.2d 663 (1964); *Wegner v. West,* 169 Neb. 546, 100 N.W.2d 542 (1960); *Einot, Inc. v. Einot Sales Co., Inc.,* 154 Neb. 760, 49 N.W.2d 625 (1951). It is also the general rule that where a contracting party, with knowledge of a breach by the other party, receives money in the performance of the contract, he will be held to have waived the breach. 17 Am. Jur. 2d *Contracts* § 396 (1964); 17A C.J.S., *supra* § 492(1). In *Einot, Inc. v. Einot Sales Co., Inc., supra,* we held that where a party to a contract, with full knowledge of the facts and with knowledge of a breach by the other party, receives money in the performance of the contract, the breach will be deemed to have been waived. See, also, *Wegner v. West, supra; Robinson Outdoor Advertising Co. v. Wendelin Baking Co.,* 145 Neb. 112, 15 N.W.2d 388 (1944). A written executory contract may be modified by the parties thereto at any time after its execution and before a breach has occurred, without any new consideration; and the terms of a written executory contract may be changed by a subsequent parol agreement before a breach thereof. *W. Wright, Inc. v. Korshoj Corp.,* 197 Neb. 692, 250 N.W.2d 894 (1977); *Jenkins v.*

*Watson-Wilson Transp. System, Inc.,* 183 Neb. 634, 163 N.W.2d 123 (1968); *Bowman v. Wright,* 65 Neb. 661, 91 N.W. 580 (1902).

Under the rules set out above, we believe it is clear that there was a waiver by the defendant of the condition precedent relative to the quota requirement, both expressly and also by conduct, particularly by the reception of the benefits by the defendant and reception of the money paid to it by way of premiums and the commissions paid thereon to the plaintiff for 1978. The waiver amounted to a modification of the previous contract to the extent that the condition was eliminated. No issue is raised in this appeal as to the amount of the commission claimed due by the plaintiff, of which there is evidence in the record; the dispute is as to whether the commissions were payable at all.

We now comment briefly on certain contentions and objections made by defendant in its brief. Defendant contends that the court violated the parol evidence rule in allowing testimony of subsequent oral modifications and waivers of the original agreement. Defendant overlooks the fact that the modification or waiver in this case was made subsequent to the execution of the written agreement. The rule in this state is that the parol evidence rule relates only to agreements made prior to or contemporaneous with the written agreement and does not apply to parol agreements made after a written agreement, which is the situation in this case. See *Jenkins v. Watson-Wilson Transp. System, Inc.,* supra.

Defendant also raises as error the action of the court in admitting evidence adduced by Wesley Pearce concerning certain negotiations to purchase his agency. We have previously commented on the evidence relating to the purchase of the agency, and only wish to add that the court sustained defendant's objection to the testimony, ordered it stricken, and told the jury to disregard the statement. The rule is

that when evidence is improperly received, but immediately ordered stricken and the jury is instructed to disregard it, any error is cured. *Danner v. Walters,* 154 Neb. 506, 48 N.W.2d 635 (1951); *Sheridan v. Dudden Implement, Inc.,* 174 Neb. 578, 119 N.W.2d 64 (1962).

Defendant also objected to the admission of exhibit 8 (the letter of September 27, 1979), which it claims contains no relevant evidence necessary to prove Pearce's allegations. We do not agree. Exhibits 8, 9, and 10 were offered and received simultaneously for the purpose of showing the termination history of the plaintiff as to each of the three companies. Proof of the termination date was necessary to establish a cutoff point for the computation of damages. Even if considered as inadmissible, we believe it was harmless, as the verdict was supported by sufficient competent evidence.

We also wish to add that the testimony with reference to the language of the addendum was not offered for the purpose of modifying the agreement, but had reference and pertinence to the subsequent waiver of the terms of the agreement, and as such was properly received.

We have examined all of defendant's assignments of error and believe that they are not meritorious. In view of what we have stated above in this opinion, we conclude that the verdict of the jury, and the judgment entered thereon by the court, was correct and must be affirmed.

AFFIRMED.