MICHAEL G. KATSKEE, MITCHELL D. KATSKEE, AND SALLY A.
SHIELDS, COPERSONAL REPRESENTATIVES OF THE ESTATE OF
LOYAL KATSKEE, DECEASED, DOING BUSINESS AS L.K. COMPANY,
APPELLANTS, V. NEVADA BOB'S GOLF OF NEBRASKA, INC., A
NEBRASKA CORPORATION, DOING BUSINESS AS NEVADA BOB'S,
APPELLEE.

472 N.W.2d 372

Filed July 19, 1991.    No. 89-170.

Paul R. Elofson, of Abrahams, Kaslow & Cassman, for appellants.

Charles L. Titus for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

Plaintiffs-appellants, Michael G. Katskee, Mitchell D. Katskee, and Sally A. Shields, personal representatives of the estate of Loyal Katskee, deceased, alleged that by failing to make certain payments, defendant-appellee, Nevada Bob's Golf of Nebraska, Inc., a Nebraska corporation doing business in Omaha, Nebraska, as Nevada Bob's, breached its obligations as the lessee of certain shopping mall space from decedent's sole proprietorship, L.K. Company. Nevada Bob's in turn counterclaimed, pleading that L.K. Company is estopped from asserting the breach by Nevada Bob's, as L.K. Company had earlier breached the lease by failing to allow Nevada Bob's to exercise its right of first refusal to lease and occupy space adjacent to the demised space, thereby diminishing its profits, and by overcharging for common area expenses. Pursuant to verdict, the district court dismissed the personal representatives' second amended petition and entered a judgment in the sum of $58,000 in favor of Nevada Bob's on its counterclaim. The personal representatives claim the district court erred in (1) failing to find that Nevada Bob's, as a matter of law, waived its right of first refusal, (2) failing to require

Nevada Bob's to prove it had filed a claim in the estate proceedings, (3) denying the personal representatives leave to amend their pleadings to allege the failure of Nevada Bob's to file the aforesaid claim, (4) instructing the jury that it could not find both for the personal representatives on their petition and for Nevada Bob's on its counterclaim, and (5) finding Nevada Bob's sufficiently proved its damages to submit that issue to the jury. We reverse and remand for a new trial.

The lease in question was executed on October 12, 1983, and provided that Nevada Bob's would have a right of first refusal on adjoining space.

In May or June 1984, Nevada Bob's decided it needed to expand its facilities. In July or August 1984, Richard Johnson contacted L.K. Company about renting space in the mall for his business, Frank's Music Collectibles. Johnson was interested in the space which was subject to Nevada Bob's right of first refusal.

Michael Katskee, decedent's son in charge of L.K. Company's operations and one of the personal representatives, testified that he informed Paul Mulligan, Nevada Bob's manager, that L.K. Company had a prospective tenant for the adjacent space and needed to speak with Craig Reitz, president of Nevada Bob's. The son said he met with Reitz approximately 2 weeks later, reminded him that Nevada Bob's had a right of first refusal on the space, and told him of Johnson's interest. According to the son, Reitz told him that Nevada Bob's was not interested in the space, and a few weeks later Johnson rented it.

In contrast, Reitz testified that he first learned of Johnson's lease of the adjacent space after the fact and that it was he who reminded the son that Nevada Bob's had a right of first refusal on the space. According to Reitz, the son told him he would "see what he could do." Reitz further testified that the son informed him in October 1984 that Johnson would be unable to leave the adjacent space until after Christmas. When Johnson did not relocate after Christmas, Reitz again contacted the son and was informed that Johnson would not be moving. In February 1985, Nevada Bob's offered to help relocate Johnson and pay the first month's rent at the new location on the theory that this would be more expedient and cost-effective than

vacating the leased premises and defending a lawsuit.

Reitz stated that he had another conversation with the son in May 1985, in which Reitz informed the son that Nevada Bob's would have to relocate in the fall unless permitted to expand. According to Reitz, the son said that Johnson's lease expired on August 31, and suggested that Nevada Bob's wait and see if Johnson would renew. Johnson's lease was renewed in October.

Reitz testified that Nevada Bob's informed the son in August 1985 that they would be seeking new space and that as soon as such was found, Nevada Bob's would vacate the leased premises.

Decedent died on November 12, 1985. On December 6, 1985, Nevada Bob's sent L.K. Company a registered letter informing it that Nevada Bob's would vacate the leased premises as of January 31, 1986. Nevada Bob's vacated the premises in mid-January 1986. It was $900 in arrears on the rent due as of the date it tendered its final payment in January 1986 and did not pay rent for the remaining 9 months of its lease term. L.K. Company was unable to relet the space.

The claim that the district court erred by failing to find that as a matter of law Nevada Bob's waived its right of first refusal is controlled by the rule that a waiver is the voluntary and intentional relinquishment or abandonment of a known existing legal right, or conduct which warrants an inference of relinquishment of such a right. To establish waiver of a legal right, there must be clear, unequivocal, and decisive action by the party which demonstrates such purpose, or acts amounting to estoppel. *Wheat Belt Pub. Power Dist. v. Batterman*, 234 Neb. 589, 452 N.W.2d 49 (1990); *Jelsma v. Scottsdale Ins. Co.*, 231 Neb. 657, 437 N.W.2d 778 (1989). A written contract may be waived in whole or in part, either directly or inferentially, and the waiver may be proved by express declarations manifesting the intent not to claim the advantage, or by so neglecting and failing to act as to induce the belief that it was the party's intention to waive. *Jelsma, supra*; *Pearce v. ELIC Corp.*, 213 Neb. 193, 329 N.W.2d 74 (1982).

If the jury wished to do so, it could reasonably interpret Reitz' testimony as demonstrating not an intent on the part of Nevada Bob's to waive its option on the adjacent space but,

rather, a willingness by Nevada Bob's to go to great lengths to find a way to exercise its right without resorting to litigation. Consequently, the district court could not properly conclude that Nevada Bob's as a matter of law waived its right of first refusal.

We thus reach the second claimed error, the district court's failure to obligate Nevada Bob's to prove, as an element of its counterclaim, that it had filed a claim with the decedent's estate as required by Neb. Rev. Stat. § 30-2485 (Reissue 1989).

Section 30-2485(a), in pertinent part, provides:

> All claims against a decedent's estate which arose before the death of the decedent, including claims of the state and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, if not barred earlier by other statute of limitations, are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented as follows:
>
> (1) within two months after the date of the first publication of notice to creditors if notice is given in compliance with section 30-2483 [providing for notice by publication] . . . . If any creditor has a claim against a decedent's estate which arose before the death of the decedent and which was not presented within the time allowed by this subdivision, including any creditor who did not receive notice, such creditor may apply to the court within sixty days after the expiration date provided in this subdivision for additional time and the court, upon good cause shown, may allow further time not to exceed thirty days;
>
> (2) within three years after the decedent's death, if notice to creditors has not been published.

The personal representatives offered but were not permitted to prove that estate proceedings were commenced in the county court for Douglas County on November 25, 1985, that notice to creditors of decedent's death was published and the final date for filing a claim against the estate was January 27, 1986, and that Nevada Bob's did not file any claim. Although it is true that

the lease was signed on behalf of L.K. Company by the son, the document identified the lessor as "L.K. Company (Loyal Katskee)." Thus, the suggestion by Nevada Bob's that it could not have known its lease was with decedent's sole proprietorship is untenable.

Nevada Bob's next argues that § 30-2485 is inapplicable because the lease defines "lessor" (and lessee) to include the "heirs, executors, administrators, successors and assigns," and thus, by implication, personal representatives. According to Nevada Bob's, the fact that the lease defines lessor to include personal representatives takes its counterclaim out of the provisions of the probate code. This assertion is without merit. The statutory language is clear: "All claims against a decedent's estate which arose before the death of the decedent . . . are barred against the estate, the personal representative, and the heirs and devisees" unless presented within the appropriate period. The counterclaim of Nevada Bob's is against the personal representatives in their capacity as such for a breach by decedent during his life. The claim is barred unless filed within the period set forth in § 30-2485.

Recognizing the likelihood that we would reject the position just dismissed, Nevada Bob's next contends that the nonclaim statute does not apply to counterclaims. Following a long line of earlier cases holding that a statute of limitations will not bar a defense of recoupment, we recently reaffirmed that the defense of recoupment is not barred by § 30-2485. *In re Estate of Massie*, 218 Neb. 103, 353 N.W.2d 735 (1984), *disapproved on other grounds, In re Estate of Price*, 223 Neb. 12, 388 N.W.2d 72 (1986). Nevada Bob's invites us to extend the *Massie* exception to include counterclaims as well; it is an invitation we decline, for there is a difference between recoupment and a counterclaim. The former is purely defensive, while the latter seeks to recover an affirmative judgment.

According to C. Wright, The Law of Federal Courts at 534-35 (4th ed. 1983):

> The usual doctrine, with respectable common law origins, is that an unrelated counterclaim is barred by the statute of limitations. A counterclaim that arises out of the transaction or occurrence on which the action is founded

may be asserted for purposes of recoupment to prevent or reduce a judgment for plaintiff but affirmative relief will not be given on such a counterclaim.

The counterclaim of Nevada Bob's arises out of the same transaction as does the personal representatives' action, i.e., the lease between L.K. Company and Nevada Bob's. Therefore, the rights of Nevada Bob's under the lease may be asserted for recoupment and thus limit or defeat the personal representatives' claim, but cannot become the basis of an affirmative award against the personal representatives. To hold otherwise would be to open the door to collusive lawsuits. It is to avoid such suits that we have held a personal representative cannot waive the bar of the nonclaim statute to the detriment of the estate, even by failing to plead it. *In re Estate of Masopust*, 232 Neb. 936, 443 N.W.2d 274 (1989). This rule prevents a personal representative from favoring a particular late claimant. If we were to hold that an otherwise barred claim could be raised as a counterclaim, a personal representative would be able to avoid the rule against waiver simply by filing a meritless suit against a favored creditor, thereby permitting that creditor to avoid the bar of the nonclaim statute and defeat the very purpose of the rule against waiver.

Having concluded that the nonclaim statute is applicable, we must address the third assignment of error by determining the effect of the personal representatives' failure to plead the statute in their answer to the counterclaim of Nevada Bob's.

We have already noted that failure to plead the nonclaim statute does not effect a waiver of the statutory bar. *In re Estate of Masopust, supra*. See, also, *Storm v. Cluck*, 168 Neb. 13, 95 N.W.2d 161 (1959); *In re Estate of Golden*, 120 Neb. 226, 231 N.W. 833 (1930); *Estate of Fitzgerald v. First Nat. Bank of Chariton*, 64 Neb. 260, 89 N.W. 813 (1902) (cases in accord with *Masopust* but predating adoption of the present probate code).

Neb. Rev. Stat. § 30-2484 (Reissue 1989) provides, in pertinent part: "Unless an estate is insolvent the personal representative, *with the consent of all successors*, may waive any defense of limitations available to the estate." (Emphasis supplied). Since the personal representatives cannot waive the defense without the consent of all the successors and failure to

plead the nonclaim defense does not act as a waiver, the effect is to make proof of compliance with the claim procedure a condition precedent to, or an essential element of, the counterclaim of Nevada Bob's, irrespective of the allegations in the personal representatives' answer.

The foregoing resolution of the second and third assignments of error obviously requires a reversal of the district court's judgment and a remand of the cause for a new trial. Nonetheless, we address the fourth assignment of error, which challenges an instruction to the jury, for the analysis of that assignment further explains the interplay between the personal representatives' petition and the counterclaim of Nevada Bob's.

In presenting their argument in this regard, the personal representatives acknowledge they failed to object to the instruction when it was tendered for review, but contend that the instruction was plain error and for that reason warrants reversal of the district court's judgment.

In view of the determination that, in any event, further proceedings must be had, the personal representatives' failure to object is academic. Nonetheless, it is worth recalling that failure to object to an instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error indicative of a probable miscarriage of justice; however, the trial court must instruct the jury on the law of the case, whether so requested or not. *State v. Lohman*, 237 Neb. 503, 466 N.W.2d 534 (1991). Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. Plain error may be asserted for the first time on appeal or be noted by the appellate court on its own motion. *State on behalf of Garcia v. Garcia, ante* p. 455, 471 N.W.2d 388 (1991); *In re Interest of M.B. and J.B.*, 233 Neb. 368, 445 N.W.2d 618 (1989).

The questioned instruction advised the jury it could not "return a verdict for the [personal representatives] on [their] petition and for [Nevada Bob's] on [its] counterclaim. A recovery by the one precludes a recovery by the other."

(Emphasis in original.) It is erroneous in two respects.

First, the instruction ignores the fact that the jury could have found in favor of the personal representatives on their claim for the $900 in arrearages which accrued before Nevada Bob's vacated the premises, while still finding that the claim for rent accruing after the departure by Nevada Bob's was defeated by L.K. Company's failure to give Nevada Bob's an opportunity to exercise its right of first refusal. Second, because of the bar imposed by the nonclaim statute, Nevada Bob's could only use its counterclaim for recoupment; absent a recovery by the personal representatives, Nevada Bob's would have nothing against which to recoup.

Because the same issue is likely to arise during the course of a new trial, we look to the adequacy of the proof of damages sustained by Nevada Bob's.

The witness called as an expert on the topic by Nevada Bob's testified that Nevada Bob's lost $130,445 in profits because it was not permitted to expand into the adjacent L.K. Company space. The witness computed this figure by determining the yearly revenue produced per square foot at the location to which Nevada Bob's moved after vacating the L.K. Company premises and multiplying that figure by the square footage of the adjacent space. The witness called that result the revenue Nevada Bob's lost per year because it was unable to expand. He next multiplied this computation by gross profit margin and subtracted therefrom his estimate of the additional expenses incident to the increased square footage. He then divided this figure by 12 to obtain what he designated as lost profits per month and multiplied that figure by the number of months Nevada Bob's stayed at the L.K. Company premises after L.K. Company's breach of the option provision of the lease.

> One injured by a breach of contract is entitled to recover all its damages, including the gains prevented as well as the losses sustained, provided the damages are reasonably certain and such as might naturally be expected to follow the breach. [Citations omitted.] While it is true that such damages need not be proved with mathematical certainty, neither can they be established by evidence which is speculative and conjectural. [Citation omitted.] [We have]

observed that loss of prospective profits may be recovered if the evidence shows with reasonable certainty both their occurrence and the extent thereof. Uncertainty as to the fact of whether damages were sustained at all is fatal to recovery, but uncertainty as to amount is not if the evidence furnishes a reasonably certain factual basis for computation of the probable loss. [Citation omitted.]

*Buell, Winter, Mousel & Assoc. v. Olmsted & Perry*, 227 Neb. 770, 774, 420 N.W.2d 280, 283-84 (1988).

As noted previously, the lost-revenue figure was based upon the performance of Nevada Bob's at the new location, not at the L.K. Company premises. The expert assumed that the only difference between the two locations was the square footage. No studies or comparisons were made as to differences in the customer base, relative accessibility of the facilities, proximity to recreation areas or other shopping areas, parking, or any other external factors.

The witness also used sales figures from a different time period and made no study as to any changes in the relevant market. He did not evaluate whether there was any change in the number of competitors, whether there was any change in consumer interest in the relevant products, or whether there were any changes in the products sold by Nevada Bob's.

He assumed that since Nevada Bob's sold $216 worth of merchandise per square foot at the new location for 1986, it would have had identical revenue per square foot at the L.K. Company premises during the previous 17 months. As the expert provided no foundation for this assumption, there is no basis upon which the jury could conclude that the two locations and time periods were comparable. Thus, the revenue per square foot from the new location was irrelevant, and the witness' lost-profits figure is mere speculation and conjecture.

Nor did the testimony of Reitz provide a basis upon which the jury could assess damages. This witness, who has a degree in corporate finance, who has been in the sporting goods business since 1970, and who operates a number of sporting goods stores, opined that as a result of its inability to expand into the adjacent L.K. Company space, Nevada Bob's lost $130,000 in profits. His opinion was based upon a review of the corporate

books and records; the "substantial similarity" between the operations of Nevada Bob's at the L.K. Company location and the new location, as well as between those locations and his other stores; discussions with other Nevada Bob's franchise owners as to optimum square footage; and his experience in the business. He also testified that both the L.K. Company and the new Omaha locations had the identical customer base. Although he testified that he made a traffic survey of the new location "by sight," he did not relate the results of this survey to his opinion, and he admitted that he made no such survey at the old location.

This testimony, like that of the other expert testifying for Nevada Bob's, fails to establish that the L.K. Company location was similar to the locations with which it was compared. Although Reitz stated that the operations at the various locations were substantially similar, he did not establish that the locations themselves were similar. In addition, Reitz' comparison of performance at the L.K. Company location with that at the new location suffers from the same temporal problems as did that of the other witness. In sum, Reitz' testimony is as speculative and conjectural as that of the other expert.

For the foregoing reasons, the judgment of the district court is reversed and the cause remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR A NEW TRIAL.

WHITE, J., dissenting.

The majority has reversed the judgment and remanded this cause on other grounds, but has nonetheless found it necessary to advise all the parties, as well as the trial court, that the testimony by the expert witness of Nevada Bob's was "speculative and conjectural." I disagree with the majority's comments concerning the adequacy of proof of damages for lost profits, as well as the advisory nature of these comments.

A trial court's ruling in receiving or excluding an expert's opinion will be reversed only when there has been an abuse of discretion. *Fuglsang v. Blue Cross*, 235 Neb. 552, 456 N.W.2d 281 (1990). Neb. Rev. Stat. § 27-702 (Reissue 1989) permits an expert to testify if his scientific, technical, or other specialized

knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. The witness must have sufficient skill, knowledge, experience, training, or education in order to qualify as an expert.

The majority concludes that the calculation of lost revenue sustained by Nevada Bob's at the L.K. Company premises cannot be based on the performance of Nevada Bob's at the new location. The majority asserts that this testimony, as well as the testimony of the company president, Reitz, was insufficient because it failed to establish that the L.K. Company location was similar to the locations with which it was compared and upon which the lost-profit figures were based. The majority does not dispute the expert status of either witness.

The evidence strongly tended to show an optimum sales potential was achieved when space available reached the desired size. To what extent the damages calculation should be discounted or credited was and is a question for the finder of fact. According to our standard of review, that finding may not be overturned unless there has been an abuse of discretion by the trial court.

I agree that in any event Nevada Bob's is entitled only to a setoff of any damages awarded to the L.K. Company. The record contains sufficient evidence for the trial court to conclude that the lost profits of Nevada Bob's at the L.K. Company location equaled $130,445. Therefore, since the damages of Nevada Bob's far exceed any damages that could possibly be awarded to the L.K. Company, the L.K. Company's claim should be dismissed and the counterclaim of Nevada Bob's should be dismissed.

Once again the majority has seen fit to substitute its judgment for that of the trial court. I find no abuse of discretion by the trial court in this case.