MICHAEL NOLAN, APPELLEE, V. TIM CAMPBELL,
ALSO KNOWN AS TIMOTHY C. CAMPBELL, APPELLANT.

690 N.W.2d 638

Filed December 21, 2004. No. A-03-686.

Elaine A. Waggoner, of Waggoner Law Office, for appellant.

Michael C. Cox and Elizabeth M. Callaghan, of Koley Jessen, P.C., for appellee.

INBODY, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.

## I. INTRODUCTION

Tim Campbell, also known as Timothy C. Campbell, appeals the judgment entered by the Madison County District Court awarding Michael Nolan, the city administrator of Norfolk, Nebraska, $78,000 on his petition for libel and false light invasion of privacy and enjoining Campbell from specific uses of certain publications and terminology. While we uphold the award of damages, we must narrow the scope of the injunctive relief to constitutionally permissible boundaries.

## II. FACTUAL BACKGROUND

In 1996, several property owners near 25th Street and the Berry Hill subdivision in the city of Norfolk (the city), including Campbell's parents, were informed that they were responsible either for constructing a sidewalk in the area or for paying the costs of such construction. Following several years of discussions and legal battles, Campbell's parents settled with the city and paid $5,233.47 for the sidewalk, which the city built.

Unhappy about the sidewalk matter, despite having no interest in the property, Campbell authored numerous documents criticizing various city employees in the 5 years before this trial. He has published the documents in a number of ways, including by having the Madison County District Court record them as public notices in the district court clerk's office. Three of Campbell's publications are at issue here, dated April 3, 2002; April 11, 2002;

and May 15, 2002. While Nolan's petition fully sets forth the precise language from each of the three documents which he contends is libelous per se, we provide a sample of Campbell's writings. The publications allege that Nolan conducted "scams involving deceit and collusion"; that he "stole," "extorted," and "embezzled"; and that he was a "con artist" and "thief." (Emphasis omitted.) Additionally, one publication alleged that Nolan retained political office "[b]y oppression, deception, dilatory actions (which harm others), intimidation, [and] dishonoring City records." As to the three publications, Nolan sent a retraction request for each of them pursuant to Neb. Rev. Stat. § 25-840.01 (Reissue 1995). Campbell did not respond to the retractions, and this action was subsequently filed on May 23.

### III. PROCEDURAL BACKGROUND

Nolan, through counsel, filed his petition alleging that the April 3 and 11 and May 15, 2002, publications contained libelous statements and constituted false light invasion of privacy. He prayed for damages and the issuance of a permanent injunction. Campbell, acting pro se, filed his answer, in which he specifically denied paragraphs 4 through 15 of the petition, which paragraphs contained general allegations. However, Campbell's answer failed to address the remaining paragraphs, 16 through 54, of the petition, in which paragraphs Nolan specifically alleged that the statements made by Campbell, which he quoted in the petition, were false, libel per se, and defamatory.

Because Campbell failed to admit or deny the material allegations in the petition, which are found in said paragraphs 16 through 54, Nolan filed a motion to have the allegations deemed admitted. The motion is not in the record before us, but our bill of exceptions contains a transcript of the August 26, 2002, hearing on the motion. At the conclusion of the hearing, the court denied the motion, giving Campbell 21 days to further answer the petition and then 14 days for Nolan to reply. Campbell failed to supplement his answer, so Nolan filed a second motion to have the allegations deemed admitted, as well as a motion to compel discovery. Following a hearing, the district court denied the motion to compel and ruled that Campbell had 21 additional days to respond to discovery. The court also gave Campbell 21 additional days to supplement his answer to the petition.

On November 25, 2002, Nolan filed his third motion to have the allegations deemed admitted, his second motion to compel discovery, and a motion for partial summary judgment. Following a hearing on the motions, the district court found that Campbell "offered no evidence showing an issue of material fact relative to libel and false light" and that Campbell failed to answer discovery. The court granted partial summary judgment in Nolan's favor on the libel and false light claims as to the publications of April 3 and 11 and May 15 but did not determine damages. The district court also overruled Nolan's request for an injunction. The court found that because the " 'law' " portion of the action was not yet complete, it was "not appropriate for this Court to s[i]t as an 'equity' court on the request for an injunction." Thus, damages remained to be determined by trial.

On March 6, 2003, Campbell filed a motion to continue the trial, but there is nothing in the record indicating a ruling on the motion. In any event, the trial on damages began on March 12. The jury awarded Nolan $13,000 for each of the three claims of libel and $13,000 for each of the three claims of false light invasion of privacy. As a result, the district court entered a $78,000 judgment in favor of Nolan. Campbell then filed a motion for new trial.

On April 28, 2003, the court held a hearing on Campbell's motion for new trial and Nolan's motions for costs and an injunction. The district court entered an order finding that Campbell's motion for new trial claiming an excessive verdict was without merit. Additionally, the court ordered:

2. [Campbell] is hereby permanently enjoined as follows:

a. [Campbell] is permanently enjoined from republishing, displaying or delivering any publication relative to . . . Nolan which was published prior to the trial of this matter on March 12, 2003; and

b. [Campbell] is permanently enjoined from publishing, displaying and delivering any new material referring to . . . Nolan utilizing any of the following terms: con artist, thief, scam's [sic] of . . . Nolan, scam's [sic] involving deceit, collusion and grand theft by deception under color of law, stole, fraud, corrupt, extorted, fleeced, embezzled, dishonest, oppression, deception, racketeering, criminal violation of civil rights and mail fraud.

Campbell, now with counsel, appeals the judgment and order of the court overruling his motion for new trial and imposing injunctive relief.

## IV. ASSIGNMENTS OF ERROR

Campbell asserts that the district court "committed plain error" in (1) sustaining Nolan's motion for partial summary judgment with respect to the actions for libel and false light; (2) allowing the testimony of the Norfolk City Attorney, Clint Schukei, on irrelevant matters; (3) admitting exhibit 31; (4) precluding Campbell from cross-examination of some witnesses; (5) not granting Campbell's motion for continuance for a longer time; and (6) permanently enjoining Campbell from using "certain terminology in regard to [Nolan]." Campbell also asserts that the amount of the verdict was "clearly excessive."

## V. ANALYSIS

 Campbell, acting pro se until the appeal was filed, failed to object to any of the errors which allegedly occurred during the conduct of the trial. Failure to make a timely objection waives the right to assert prejudicial error on appeal. *Steele v. Sedlacek*, 267 Neb. 1, 673 N.W.2d 1 (2003). Campbell asserts on appeal that we should find plain error concerning a number of his assigned errors. Plain error may be asserted for the first time on appeal or be noted by the appellate court on its own motion. *Katskee v. Nevada Bob's Golf of Neb.*, 238 Neb. 654, 472 N.W.2d 372 (1991). Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 674 N.W.2d 442 (2004).

### 1. PARTIAL SUMMARY JUDGMENT

#### (a) Guiding Principles

 Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Keys v. Guthmann*, 267 Neb. 649, 676 N.W.2d 354 (2004). In reviewing a summary judgment,

an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *First Colony Life Ins. Co. v. Gerdes*, 267 Neb. 632, 676 N.W.2d 58 (2004).

## (b) Libel

A claim of defamation requires (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Norris v. Hathaway*, 5 Neb. App. 544, 561 N.W.2d 583 (1997). Spoken or written words are slanderous or libelous per se only if they falsely impute the commission of a crime involving moral turpitude, an infectious disease, or unfitness to perform the duties of an office or employment, or if they prejudice one in his or her profession or trade or tend to disinherit one. *Matheson v. Stork*, 239 Neb. 547, 477 N.W.2d 156 (1991).

When the plaintiff in a libel action is a public figure and the speech is a matter of public concern, the plaintiff must demonstrate "actual malice," which means knowledge of falsity or reckless disregard for the truth, by clear and convincing evidence. See *Hoch v. Prokop*, 244 Neb. 443, 507 N.W.2d 626 (1993). The plaintiff in a "public-libel" action must also establish by clear and convincing evidence that the alleged statement is false. See *id.* The U.S. Supreme Court in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974), defined public figures as those who occupy positions of such persuasive power and influence that they are deemed public figures for all purposes or those who have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. While the trial court did not make an express finding that Nolan was a public figure, we have little hesitancy in saying that he, as the city administrator, is a public figure within the parameters of *Gertz*.

Nolan's petition alleged that the April 3 and 11 and May 15, 2002, publications contained "false and defamatory" material and that the words and statements quoted in his petition from each

publication were false statements of fact, libelous per se, and published with knowledge of their falsity or with reckless disregard for their truth. He further alleged that as a result of the defamation, he suffered damage to his personal and business reputation. Importantly, as earlier detailed, Campbell did not deny all of the petition's material allegations in his answer.

During the course of the proceedings, Nolan moved three times to have the allegations in the petition deemed admitted due to Campbell's failure to answer the petition's paragraphs 16 through 54. The court denied the first two motions, granting Campbell additional time to supplement his answer. As to the third motion, the hearing was held in conjunction with Nolan's motion for partial summary judgment. Although the court did not specifically grant the third motion to have the allegations deemed admitted, the district court may have implicitly ruled on it by granting Nolan's motion for partial summary judgment. In any event, allegations of a petition not denied are, in fact, admitted without any predicate ruling from the court. See *Saberzadeh v. Shaw*, 266 Neb. 196, 663 N.W.2d 612 (2003) (admission made in pleading on which trial is had is judicial admission constituting limitation of issues, and party may at any time invoke language of pleading on which case is tried). "Every material allegation of the petition not controverted by the answer . . . shall, for the purposes of the action, be taken as true." Neb. Rev. Stat. § 25-842 (Reissue 1995) (repealed operative January 1, 2003). Although this statute was repealed when the Legislature adopted "notice pleading," it is applicable to this action because the petition at issue was filed May 23, 2002, prior to when notice pleading took effect. Although Campbell was acting pro se, he is held to the same standards as all others who appear before the courts. See *Arcadia State Bank v. Nelson*, 222 Neb. 704, 386 N.W.2d 451 (1986). "If one chooses to represent himself or herself before a tribunal, one must accept the consequences of one's own failure to properly present sufficient evidence to sustain one's burden." *Dobrovolny v. Dunning*, 221 Neb. 67, 72, 375 N.W.2d 123, 126 (1985). Therefore, to satisfy the elements of defamation, we take the undenied allegations in the petition regarding the contents of Campbell's publications, the fact of publication, and the fact that Campbell acted with knowledge of the allegations' falsity or with

reckless disregard of their truth. Thus, there was no genuine issue of material fact, beyond damages, and Nolan was entitled to summary judgment on the issue of libel for all three publications.

### (c) False Light Invasion of Privacy

■ Neb. Rev. Stat. § 20-204 (Reissue 1997) provides that any person who gives publicity to a matter concerning a natural person that places that person before the public in a false light is subject to liability for invasion of privacy if (1) the false light in which the other was placed would be highly offensive to a reasonable person and (2) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. The district court found that the elements in § 20-204 were satisfied and that there was no genuine issue of material fact. Thus, summary judgment was granted on all three false light claims. Again we find, as in the libel claims, that the petition alleges the necessary elements, which were not denied in Campbell's answer. Therefore, the allegations are deemed admitted and there is no genuine issue of material fact. The district court did not err in granting summary judgment on all three claims of false light invasion of privacy.

### 2. TESTIMONY OF CITY ATTORNEY AND EXHIBIT 31

■ Campbell alleges that the court plainly erred in allowing the Norfolk City Attorney, Schukei, to testify to irrelevant matters and in admitting exhibit 31. Evidence is relevant if it has any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence, or the evidence tends to establish a fact from which the existence or nonexistence of a fact in issue can be directly inferred. *Blanchette v. Keith Cty. Bank & Trust Co.*, 231 Neb. 628, 437 N.W.2d 488 (1989).

At the time of the hearing on damages, Schukei was the Norfolk City Attorney. Because Schukei worked closely with Nolan and because Nolan alleged that the defamatory publications affected his business and professional reputation, Schukei's opinion as to Nolan's reputation in connection with his work was certainly relevant. Schukei also testified to background information regarding the conflict between Campbell, his parents, and the city.

During Schukei's testimony, exhibit 31, which was Schukei's letter to the Counsel for Discipline of the Nebraska State Bar Association, was admitted. Schukei wrote the letter to the Counsel for Discipline in response to Campbell's complaint about Schukei filed with the Nebraska State Bar Association. Again, the letter provides background information as to the conflict between Campbell, his parents, and the city. There was extensive testimony about Campbell's attacks on Schukei and why Schukei had not done anything such as file a suit similar to Nolan's. Such questions led to Schukei's providing evidence that Campbell had overindulged in alcohol, that Campbell's obsession with the sidewalk was not "normal," and that Schukei had some fear of "retribution" from Campbell. There was no objection to any of this testimony.

Remembering that the issue for trial was solely the damages suffered by Nolan as a result of the libel and false light invasion of privacy, we find that such testimony had marginal relevance, if any. After such evidence was adduced, the trial judge did caution Nolan's counsel about keeping the evidence more focused on the issue of Nolan's damages. Nonetheless, we are unwilling to apply the plain error doctrine to reverse the jury's verdict because of this evidence. The matter of Nolan's damages cannot be presented without some context and background, and from the history of this matter, most jurors would, at the very least, wonder whether Campbell's behavior concerning the sidewalk was "normal," even without Schukei's testimony that it was not. In summary, while some of Schukei's testimony would not have withstood a relevancy objection, we cannot say that its admission without objection was plain error such that not correcting it would result in damage to the integrity, reputation, or fairness of the judicial process. We reach this conclusion in part because the contents of the three publications at issue are so obviously beyond the range of civilized and appropriate discourse over whether sidewalks should be installed at homeowner expense that we cannot conclude that the damages awarded, $13,000 on each of Nolan's six causes of action, were a product of such evidence. The same analysis applies to exhibit 31. It provided contextual background, but dragging in the fact that Campbell filed a complaint with the bar association and Schukei responded does not tend to prove

anything regarding Nolan's damages. But again, any harm that may have occurred cannot be said to justify upsetting the jury's decision using the plain error doctrine.

### 3. CROSS-EXAMINATION

Campbell claims that the trial court erred in limiting his cross-examination of some witnesses. Because Campbell did not object to such limitations during the hearing, we again examine whether it was plain error for the trial court to limit the examination. During Campbell's cross-examination of Schukei, the district court warned Campbell to keep his questions within the scope of the direct examination, which scope the trial judge explained. After further cross-examination of Schukei, the district court again warned Campbell, instructing him to stay within the scope of the direct examination and address the damages issue instead of addressing "the 1992 [or] the '97 hearing" (apparently hearings from the "sidewalk" litigation involving Campbell's parents). The court then gave Campbell 15 more minutes to cross-examine Schukei on the issue of damages. Campbell continued to examine Schukei outside the scope of the direct examination and even admitted, "We're covering about 27 years of history regarding my home property." Therefore, because Campbell's questioning continued to be outside the scope of the direct examination and irrelevant, the court instructed Campbell that his examination was "complete." Additionally, during Campbell's cross-examination of the Norfolk mayor, the court warned Campbell when he continually and obviously exceeded the scope of the direct examination. Again, because Campbell failed to comply with the court's orders by continuing to elicit irrelevant testimony outside the scope of the direct examination, the court terminated the cross-examination.

It is undisputed that a trial judge has broad discretion over the conduct of a trial. *Yopp v. Batt*, 237 Neb. 779, 467 N.W.2d 868 (1991). And, as we noted above, although Campbell was acting pro se, he must be held to the same standards as all other persons before the court. See *Arcadia State Bank v. Nelson*, 222 Neb. 704, 386 N.W.2d 451 (1986). The trial court did not abuse its discretion by instructing Campbell to limit the scope of his cross-examination to those matters addressed on direct examination

and, when he continually failed to do so, by terminating the cross-examination.

## 4. MOTION FOR CONTINUANCE

Campbell asserts that the trial court erred in not granting his continuance for a longer period of time. The only motion for continuance in our record was filed March 6, 2003. The motion requested that trial be continued "until after [Campbell] is medically treated with possible recovery." However, trial began on March 12, and there is nothing in the record showing whether the trial court granted or denied such motion. Thus, although Campbell states in his brief that his motion for continuance was granted, the record before us does not reflect such fact. In any event, we address Campbell's complaint that he should have had a longer continuance.

Because Campbell did not object when the trial for damages began on March 12, 2003, any claim of error in its commencement was waived. See *Steele v. Sedlacek*, 267 Neb. 1, 673 N.W.2d 1 (2003) (failure to make timely objection waives right to assert prejudicial error on appeal). Campbell asks us to find that not granting a longer continuance was plain error. Campbell's motion for continuance does not show that he was unable to participate at trial, that his medical condition would have inhibited his participation, or that treatment was imminent. His motion merely states that it was "possible" that he would have surgery in North Carolina in April 2003. Therefore, we are unable to see, and Campbell fails to demonstrate, how he was prejudiced by any ruling of the court on his motion for a continuance. There is no plain error.

## 5. SCOPE OF INJUNCTIVE RELIEF

Campbell asserts that the court erred in permanently enjoining him from using "certain terminology in regard to [Nolan]." An action for injunction sounds in equity. See *University Place-Lincoln Assocs. v. Nelsen*, 247 Neb. 761, 530 N.W.2d 241 (1995). In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court. *Blue Tee Corp. v. CDI Contractors, Inc.*, 247 Neb. 397, 529 N.W.2d 16 (1995).

An injunction is an extraordinary remedy and should not ordinarily be granted except in a clear case where there is actual and substantial injury. *Sid Dillon Chevrolet v. Sullivan*, 251 Neb. 722, 559 N.W.2d 740 (1997). Such a remedy should not be granted unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice. *Id.* The purpose of an injunction is preventive, protective, and prohibitory. *Johnson v. NM Farms Bartlett*, 226 Neb. 680, 414 N.W.2d 256 (1987).

The Nebraska Supreme Court in *Sid Dillon Chevrolet, supra*, addressed the issue of whether an injunction may be granted in a libel action. In *Sid Dillon Chevrolet*, Morton Sullivan was unhappy with the service he received at Sid Dillon Chevrolet-Oldsmobile-Pontiac, Inc. (Sid Dillon), an automobile dealership. Sullivan used mass mailings and the communication capabilities of his business to flood the media and public with announcements about Sid Dillon which stated that Sid Dillon was a "dishonest automobile dealer." *Id.* at 726, 559 N.W.2d at 744.

Sid Dillon and related plaintiffs filed a petition seeking damages and injunctive relief under two theories: (1) violation of the Uniform Deceptive Trade Practices Act (UDTPA) and (2) common-law libel and slander. The district court issued a temporary restraining order against Sullivan. The district court then entered an order finding that Sid Dillon was due injunctive relief pursuant to its UDTPA claim and that the temporary restraining order previously put in place was still effective. In a subsequent order, the district court found Sullivan in contempt of the restraining order and vacated such order, replacing it with a permanent injunction enjoining Sullivan and his agents and employees from " 'uttering any false or misleading statements of fact, written or oral . . . directed at [Sid Dillon and its co-]Plaintiffs . . . or taking other steps or actions which may reasonably lead [to] or result in the disparaging of the goods, services, or business of [Sid Dillon and its co-]Plaintiffs.' " *Sid Dillon Chevrolet*, 251 Neb. at 727, 559 N.W.2d at 744-45. Sullivan appealed.

In evaluating whether an injunction may be issued in a libel action, the Nebraska Supreme Court in *Sid Dillon Chevrolet* considered how other jurisdictions had handled the issue. The Supreme Court found the general rule to be that equity will not

enjoin libel or slander. However, the *Sid Dillon Chevrolet* court also said:

> Notwithstanding the general rule, it is also recognized that equity may restrain libel or slander if essential to preserve a property right, if the publication is in violation of a trust or a contract, or if the defamation is published in aid of another tort or unlawful act. [Citations omitted.]
>
> Some jurisdictions have concluded that an order enjoining further publication of libelous or slanderous material does not constitute a prior restraint on speech where there has been a full and fair adversarial proceeding in which the complained of publications were found to be false or misleading representations of fact prior to the issuance of injunctive relief. [Citations omitted.]

251 Neb. at 731, 559 N.W.2d at 746.

The Nebraska Supreme Court stated its conclusion:

> We adopt the view of those jurisdictions that have considered the issue and hold that absent a prior adversarial determination that the complained of publication is false or a misleading representation of fact, equity will not issue to enjoin a libel or slander, unless such libel or slander is published (1) in violation of a trust or contract or (2) in aid of another tort or unlawful act, or injunctive relief is essential for the preservation of a property right.

*Sid Dillon Chevrolet v. Sullivan*, 251 Neb. 722, 733, 559 N.W.2d 740, 747 (1997).

In applying this holding to the facts before it, the *Sid Dillon Chevrolet* court found that Sullivan's speech was not published in aid of another tort or unlawful act or in violation of Sid Dillon's property rights and that its publication did not constitute a breach of contract or of trust. Additionally, a jury had not yet determined whether Sullivan's allegations were false or misleading representations of fact. Thus, the Supreme Court stated, "For these reasons, we conclude that the temporary restraining order, as well as the permanent injunction restraining Sullivan's speech, constitute unconstitutional prior restraints in derogation of Sullivan's right to speak." *Id.* at 733, 559 N.W.2d at 747.

Although *Sid Dillon Chevrolet* establishes the rule to be used here, we find that this case is different because partial summary

judgment was granted and Campbell's publications of April 3 and 11 and May 15, 2002, were adjudicated as containing false or misleading representations of fact made with actual malice, some of which publications clearly accuse Nolan of the commission of crimes involving moral turpitude—meaning they were libelous per se. We have affirmed the district court's finding in this regard, meaning that the these particular statements are not protected speech under the First Amendment to the U.S. Constitution. Therefore, the rationale that enjoining a libel constitutes an unconstitutional prior restraint on speech is not applicable here. Here, the restraint via the injunction is permissible because the speech had been adjudicated to be libelous and therefore not to be protected under the First Amendment. Therefore, the trial court did not err in issuing an injunction. That said, we still must determine, under our de novo review, whether the injunction, as written, was narrowly drawn so as not to offend the constitutional prohibition against prior restraint of speech.

Campbell argued in his brief that "[w]hen the Court permanently enjoined him in such a broad manner, it was plain error." Injunctions should never be broader than necessary to afford complete relief to the plaintiffs. *Carhart v. Ashcroft*, 331 F. Supp. 2d 805 (D. Neb. 2004), citing *Califano v. Yamasaki*, 442 U.S. 682, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979). Although Campbell's argument is more specific about the "terminology" portion of the injunction, we think that consideration of the precise language of the injunction is inseparable from consideration of its scope. After finding that Campbell was unlikely to cease his pattern of publication and that forcing Nolan to file suit over each subsequent publication was not an adequate remedy, findings clearly supported by the record, the district court granted this injunction:

2. [Campbell] is hereby permanently enjoined as follows:

a. [Campbell] is permanently enjoined from republishing, displaying or delivering any publication relative to . . . Nolan which was published prior to the trial of this matter on March 12, 2003; and

b. [Campbell] is permanently enjoined from publishing, displaying and delivering any new material referring to . . . Nolan utilizing any of the following terms: con artist, thief,

scam's [sic] of . . . Nolan, scam's [sic] involving deceit, collusion and grand theft by deception under color of law, stole, fraud, corrupt, extorted, fleeced, embezzled, dishonest, oppression, deception, racketeering, criminal violation of civil rights and mail fraud.

In paragraph 2(a) of the court's injunction, the court enjoined Campbell with respect to "any" publications regarding Nolan which were published before the trial on March 12, 2003. However, there were only three publications—those of April 3 and 11 and May 15, 2002—that had been adjudicated as containing statements libelous per se and, therefore, as not containing protected speech. The prohibition against republishing "any" publication authored by Campbell about Nolan before the trial obviously sweeps up publications which had not been adjudicated as libelous. Nor had there been a determination that such other publications were published in violation of a trust or contract, in aid of another tort or unlawful act, or for the preservation of a property right. Therefore, the injunction is too broad as written and must be narrowed so that it is not an unconstitutional prior restraint under *Sid Dillon Chevrolet v. Sullivan*, 251 Neb. 722, 559 N.W.2d 740 (1997).

In order for the injunction to pass constitutional muster, the suppression must be limited to the precise statements already found libelous. See *Advanced Training Sys. v. Caswell Equip. Co.*, 352 N.W.2d 1 (Minn. 1984). See, also, *O'Brien v. Tenants*, 42 Ohio St. 2d 242, 245, 327 N.E.2d 753, 755 (1975) ("Once speech has judicially been found libelous, if all the requirements for injunctive relief are met, an injunction for restraint of continued publication of that *same speech* may be proper" (emphasis in original) (emphasis supplied)). Here, paragraph 2(a) can only enjoin the republication of the April 3 and 11 and May 15, 2002, publications found to be libelous. Such injunction does not constitute a prior restraint. Using our de novo power, we modify paragraph 2(a) of the injunction to read as follows:

a. Defendant, Timothy C. Campbell, is permanently enjoined from republishing in any fashion, including by public display, the publications stamped "received" by the Madison County District Court on the dates April 3, 2002, April 11, 2002, and May 15, 2002, concerning Michael

Nolan, which were found libelous in the District Court for Madison County, case No. CI02-276, and which were attached to the petition in such case. Defendant, Timothy C. Campbell, is further permanently enjoined from publishing as to Michael Nolan in any fashion, including by public display, the specific phrases quoted by the district court for Madison County, Nebraska, in its order of January 22, 2003, which phrases it found were libelous and published with "actual malice."

Turning to paragraph 2(b) of the district court's injunction, we find therein a list of words or terms which Campbell was not to publish in reference to Nolan. Campbell argues that this portion of the injunction restrains his right to speak freely about Nolan in other (and future) contexts and, therefore, infringes on his First Amendment right of free speech. The specific words listed in paragraph 2(b) of the injunction were used in the three libelous publications, except for the prohibited words "corrupt" and "fleeced." Additionally, the prohibition is not limited to the use of the listed words in connection with a particular subject matter, beyond that they were not to be used in reference to Nolan. This portion of the injunction infringes on Campbell's right to speak about Nolan and his work as city administrator in other contexts and concerning other issues besides the sidewalk dispute. Subsequent events and issues, which we cannot foresee, could make Campbell's use of the prohibited words "collusion," "dishonest," "oppression," "deception," or "fleeced" in reference to Nolan lawful protected speech. See *Farley v. McBride*, 74 Neb. 49, 54, 103 N.W. 1036, 1037 (1905) ("[i]t is proper and right that the acts of public officials should be subject to criticism"). Recognizing that a city administrator operates in a public arena involving constantly changing issues of city policy and management, upon which citizens have a right to make proper comment, we hold that paragraph 2(b) is an overly broad prior restraint. In the final analysis, we cannot assume that any use of the words in paragraph 2(b) would be libelous per se merely because past use thereof in connection with the sidewalk issue crossed the line from protected free speech to libel. Therefore, we vacate and dissolve paragraph 2(b) of the injunction.

 

### 6. EXCESSIVE VERDICT

The amount of damages to be awarded is a determination solely for the fact finder, and the fact finder's decision will not be disturbed on appeal if it is supported by the evidence and bears a reasonable relationship to the elements of the damages proved. *Carlson v. Okerstrom,* 267 Neb. 397, 675 N.W.2d 89 (2004).

> An award of damages may be set aside as excessive or inadequate when, and not unless, it is so excessive or inadequate as to be the result of passion, prejudice, mistake, or some other means not apparent in the record. . . . If an award of damages shocks the conscience, it necessarily follows that the award was the result of passion, prejudice, mistake, or some other means not apparent in the record.

*Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.,* 253 Neb. 813, 820-21, 572 N.W.2d 362, 368 (1998).

Nolan testified that he was "hurt" by the publications and that they damaged relationships in his life. He also testified that the publications affected the credibility of the city government. Similar publications had appeared in previous years, and Campbell's actions ultimately caused Nolan to be always "looking over [his] shoulder[,] constantly worrying about whether [Campbell] ha[d] persuaded [city council members] that [Nolan was] some kind of an evil person that needed to be fired." Nolan testified that he has worked hard to build a positive reputation and to how important that is to him. Nolan also said that he did not feel that he "will ever be able to regain the ground" he has lost because of the damage Campbell has done to his reputation. He testified that he became fearful of Campbell and removed his name from the telephone directory and received permission to carry a concealed weapon. We find that there is sufficient evidence in the record to support the jury's determination of damages and that the award is not excessive.

## VI. CONCLUSION

For the foregoing reasons, the cause is remanded to the district court with directions that its injunction be modified in accordance with this opinion. The monetary judgment against Campbell is affirmed.

AFFIRMED AS MODIFIED.