CHARLES GREENE, APPELLEE, V. RACHEL B. GREENE, APPELLANT.

FILED NOVEMBER 5, 1896. No. 6446.

</div>

1. **Divorce and Alimony.** Alimony may be defined to be such sum as is ordered by the court to be paid to the wife by the husband, for her support during the time she lives separate from him, or to be paid by her late husband for her maintenance after divorce from the marriage tie. This latter is a creation of modern law and is what is known as permanent alimony. (2 Bishop, Marriage & Divorce, sec. 351.)

2. ———. A husband cannot, in this state, whether he or the wife be granted the divorce, recover alimony to be paid out of the divorced wife's separate estate.

3. ———. Section 10, chapter 25, Compiled Statutes, which reads, "A petition or bill of divorce, alimony, and maintenance may be exhibited by a wife in her own name, as well as a husband; and in all cases the respondent may answer such petition or bill without oath; and in all cases of divorce, alimony, and maintenance, when personal service cannot be had, service by publication may be made as is provided by law in other civil cases under the Code of Civil Procedure," *held*, to confer upon the wife the right to commence an action of divorce in her own name and without the intervention in the suit of a next friend as was formerly required, and not to authorize the granting of alimony or maintenance to the husband, to be paid from the estate of the former wife.

4. **Bill of Exceptions:** OMISSION OF EVIDENCE. When it appears from statements in the bill of exceptions that it does not contain all

the evidence introduced at the trial of the case, such must be taken to be the fact, in the absence of any other or further proof on the subject than the certificate to the bill to the effect that it contains all the evidence.

5. ———: ———: REVIEW. Where a bill of exceptions does not contain all the evidence adduced at the trial, the evidence will not be examined by this court to ascertain whether it was sufficient to support the finding and decree of the trial court.

6. Review: OBJECTIONS. The record presented to this court did not disclose that any objections were made in the district court to its trial and adjudication in this, an action for divorce, of the alleged rights of a husband in real estate, the title to which rested in the wife. *Held*, That the questions will not be considered in this court.

APPEAL from the district court of York county. Heard below before BATES, J.

*John H. Ames, Sedgwick & Power,* and *Harwood, Ames & Pettis,* for appellant.

*George B. France* and *N. V. Harlan, contra.*

HARRISON, J.

This action was instituted in the district court of York county, by the appellee against appellant, the objects sought being to obtain a divorce from her, and other relief in regard to certain property rights. Appellant's desertion of him was alleged by appellee as the ground for the claim of divorce. It was pleaded in the petition that the parties were married at Johnsonburg, New Jersey, October 13, 1869, and that on or about November 1, 1888, the appellant deserted appellee, and for more than two years had been willfully absent from him without just cause or reason. The petition also contained a somewhat extended account of the beginning and course of their married life, and more particularly the business and financial transactions engaged in by the appellee, and reverses therein, and the consequent changes in location, etc.; and it is of the statements that appellee purchased

a certain tract of forty acres of land in York county and near York; also a lot in York, upon which he claims to have erected a store building; that this property belonged to appellee, but had been placed in the name of Robert Blair, contrary to the wishes and against, or in fraud of, the rights of appellee; that Robert Blair, deceased at the time of this action, made a will in which he devised the aforementioned land and lot to his three daughters,—the undivided one-half interest therein to appellant, and the undivided one-half to the other two. It is pleaded in the answer, and shown by the evidence, that the two sisters of appellant afterwards conveyed to her the title which they acquired to the aforesaid property. It was further set forth in the petition that there were four children, issue of the marriage, with the care, custody, and education of whom it was alleged the appellant was wholly unqualified to be trusted; that by the will of appellant's father the sum of $125,000 was bequeathed in such manner that she was entitled to receive the income therefrom, amounting to $6,000 per annum; that appellant "is the owner of a large amount of property, as hereinbefore alleged, and the plaintiff is possessed of but little means and has but little annual income, and he is unable to perform manual labor, as he is afflicted with what is commonly known as hip-joint disease, and is unable to support himself by reason thereof, and the defendant absolutely refuses to convey that which is justly due him, or to contribute anything to his support." The prayer of the petition was as follows: "The plaintiff therefore prays that he may be divorced from the defendant, and that he may be given the custody of the said minor children, and that the defendant be decreed to pay him reasonable alimony, and to convey to him each and every part of the lands hereinbefore described, and for such other and further relief as equity may require." In her answer the appellant set forth the purchase of the properties in and near York, as having been made with money furnished by her father; that they were so purchased for

her, but that the title was taken in the name of her father; that after his death it was discovered that in his will she had been given the one-half interest in them, and her two sisters one-half interest; that the two sisters afterwards conveyed to her all title or interest they had in the properties in York county, and the answer continued: "That prior to the beginning of this action  *   *   *   the said plaintiff, by a certain indenture of deed, duly executed, signed, witnessed, acknowledged, and delivered with and to one Thomas Kays, as the trustee and agent of this defendant, for a good and valuable consideration, released, relinquished, and conveyed to and for the use of this defendant all his claim, right, title, or interest, or pretended claim, right, title, or interest, in or to several tracts of land and every of them, and thereby, upon consideration as aforesaid, expressly admitted and acknowledged that this defendant was the true and only owner of all the same as her own separate estate and property, free from all interest, title, or control of said plaintiff, whereby the defendant avers that this plaintiff is estopped to assert or maintain that he has, or has had since the 24th day of July, 1888, any right, title, claim, lien, or interest in or to said lands or any of them; all of which matters were and are at issue between these same parties in an action pending in the district court of York county, Nebraska, between the same parties as in this action, which other action was pending at the time this action was commenced, and has ever since been and is now so pending as hereinbefore set forth." One portion of the answer was in the nature of a cross-petition, and contained, among others, allegations of appellee's cruelty toward appellant and his family, and his unfitness to have the custody and control of the children. Appellant asked that she be granted a divorce, that she be awarded the custody of the children, and that the title to the property in controversy be quieted and confirmed in her, and some other relief, which need not be particularly noticed. To this answer and cross-petition

the appellee filed a denial of each and every allegation
of new matter therein contained. The appellant filed a
supplemental answer in which it was pleaded that of the
action to which reference was made in the former answer
as pending in the district court of York county between
the parties hereto, and in regard to the title of the lands
and property herein involved, there had been a trial and
a judgment therein, favorable to appellant, by which she
had been awarded the ownership and title of the real es-
tate drawn into controversy, and that the cause of action
in that case was the same as in the case at bar. To this
supplemental pleading the appellee replied, admitting the
other action and that it had run its course to judgment,
but alleged that the sole issue in that case was whether
a contract upon which it was predicated had been made
by appellant under duress. This reply was, further, a
general denial of the allegations of the supplemental an-
swer, except such as were specifically admitted. Of the
issues joined there was a trial. Appellant was granted
a divorce and the custody of the children. There were
further findings and decree as follows: "The court fur-
ther finds that the plaintiff has an equitable interest in
the following described real estate, which real estate
appears on the records as the property of the defendant,
to-wit, has an interest in lot 11, block 58, in the city of
York, York county, Nebraska, according to the original
plat of the town of York, and that said interest is of the
value of $1,400. The plaintiff has also an equitable inter-
est in the southwest quarter of the southeast quarter of
section 31, township 11 north, of range 2 west, 6th P. M.,
in York county, the title to which also appears of record
in the name of defendant, and that the interest of said
plaintiff in said premises is of the value of $3,000, and the
said sum of $1,400 is a valid lien on said lot, and the said
sum of $3,000 is a valid lien on said southwest quarter of
southeast quarter, section 31, township 11, range 2 west.
* * * It is further ordered and adjudged by the court
that the plaintiff have and recover of the defendant,

Rachel B. Greene, the sum of $4,400, the value of his equitable interest in the property hereinbefore described, and that said sum be a lien on said premises in the order named." From this latter portion of the decree this appeal has been prosecuted.

One of the questions presented is, can alimony be allowed to the husband? Alimony is defined in 2 Bishop, Marriage & Divorce [6th ed.], section 351, as follows: "Alimony, in divorce law, is the allowance which a husband pays, by order of court, to his wife while living separate from him for her maintenance; or, it may be a like provision ordered for the sustenance of a woman divorced from the bond of matrimony, out of her late husband's estate,—the latter branch of the definition denoting a form of alimony known only to the modern law, not to the ancient. It may be for the wife's use during the pendency of a suit, called alimony *pendente lite*, or after its termination, known as permanent alimony." (See, also, further definition in note 1 on same page.) In section 469, in the same volume, the author observes: "If a husband is obliged to seek a divorce from his wife, and the property of the two is mainly, or entirely, vested for her separate use, it will, under special circumstances, be impossible to do justice without transferring to him some of this property. And perhaps there may be statutes in some of our states under which something approximating this can be done. But it cannot generally. Nor, where the common law rules of property prevail, are the circumstances numerous in which it ought to be; because these rules put what justly belongs to the wife as well as to the husband into his hands, to be used by him for the family's support as well as his own. Yet legislation in some of the states is setting strongly in a direction ultimately to exhibit the spectacle of rich wives supporting poor husbands; and of husbands defrauding their creditors while wealth embraces them in the arms of their wives. This condition of things is for the legislatures, not the courts; but the courts, seeing these things, may

also see a reason why they should not feel compunction, when, in a proper case, they withhold all allowance of alimony to the wife." "Alimony is allowed the wife in recognition of the husband's common-law liability to support her. Therefore, in the absence of legislation readjusting domestic relations and allowing it, there being no corresponding liability on the wife's part to support her husband, alimony cannot be granted him. In several of the states, however, alimony, or an allowance from the wife's estate in the nature of alimony, is allowed the husband by statute." (Am. & Eng. Ency. of Law [2d ed.], 92.) "An action for alimony cannot be maintained by the husband against the wife." (*Somers v. Somers*, 39 Kan., 132; Nelson, Divorce & Separation, sec. 904.) Unless allowed by our statute, the husband could recover no alimony.

It is argued that by virtue of the provisions of section 10, chapter 25, Compiled Statutes of 1895, entitled "Divorce and Alimony," that the right to recover alimony was conferred upon the husband. The section reads as follows: "A petition or bill of divorce, alimony, and maintenance may be exhibited by a wife in her own name, as well as a husband; and in all cases the respondent may answer such petition or bill without oath; and in all cases of divorce, alimony, and maintenance, when personal service cannot be had, service by publication may be made as is provided by law in other civil cases under the Code of Civil Procedure." Before the enactment of this section a wife was obliged to commence the action by a representative, by her next friend, and the evident intent of the enactment was to allow her to commence the suit in her own name without the interposition of a "next friend," and the addition of the words "as well as a husband" were meant to, and do, convey no other meaning than that the wife may commence an action in the same manner as a husband, and they do not reach back and connect with the words "alimony and maintenance" and confer upon the husband the right to alimony and maintenance in an action of divorce, either of which, unless

given by this section, he could not obtain in the action. The words were but used as a part of the description of the action which the law-makers gave the wife the right to institute in her own name. It would be a strained construction which would give them the force of raising in the husband the new right to obtain alimony and maintenance in an action of divorce. (*Wood v. Wood*, 8 Wend. [N. Y.], 357.) The rights of the appellee to receive any of the property, then, could not be predicated upon his claim for alimony and maintenance, but must be derived from such equities as accrued in his favor from the manner of the original purchase of the property and the subsequent improvement thereof, and his participation therein, and contributions thereto.

In relation to this branch of the case it is asserted by appellant that there is no evidence, or at least not sufficient evidence, to support the findings and decree of the court. To this attorneys for appellee answer that there was testimony offered and received at the trial in the district court which was not made a part of the bill of exceptions and is not presented in this court, and that it is the established rule, when such is the existent condition of the record, that the question of the sufficiency of the evidence to sustain the findings and judgment will not be examined. The record in this case discloses that the bill of exceptions was prepared and presented to the attorneys for appellee for examination and amendment and was returned to the attorney for appellant indorsed: "I herewith return this draft of a bill of exceptions in the case of Charles Greene v. Rachel B. Greene, submitted to me on the — day of ——, 1893, and propose no amendments thereto." It was said by this court, in deciding the case of *Cattle v. Haddox*, 14 Neb., 59: "Where a bill of exceptions purporting to contain all the testimony is submitted to the adverse party for amendment, and such party certifies that he has no amendments to propose to the same, the court will presume that such bill contains all the evidence, notwithstanding the certificate may not

fully so certify;" but in *Missouri P. R. Co. v. Hays*, 15 Neb., 231, it was stated: "Where all the evidence used on a trial is not before us, we cannot say that the finding was unsupported. It is true that the certificate to the bill of exceptions is to the effect that it is complete and contains all the evidence produced on the trial; but we find within the bill itself, in the questions and answers especially, incontestible proof that it does not. Where such is the case the certificate will not be taken as conclusive on that point." In the bill of exceptions we find the following statement: "Plaintiff now reads in evidence depositions of Aaron Kisselbach, Euphrennia Cramer, Fanny C. Widenor, Nicholas Harris, Howard Barron," etc. The depositions which the record refers to are not in the bill of exceptions, and where the fact that evidence was used which is not incorporated in the record appears, as it does here, it must be noticed notwithstanding the certificate to the bill and the presumption arising from the indorsement of counsel hereinbefore quoted, and where the bill does not contain all the evidence used on the trial, the objection that the finding and decree of the trial court are not supported by the evidence cannot be considered. That it would not be fair or right to do so is too apparent to need argument in its support. (*Chamberlain v. Brown*, 25 Neb., 434; *Aspinwall v. Sabin*, 22 Neb., 73; *Nelson v. Jenkins*, 42 Neb., 133.) The record before us does not disclose any objection made to the litigation of the question of the appellee's rights, if any, in the property, in this, an action of divorce. The question was presented by the pleadings, and, as shown in the record, was fully submitted to the trial court; hence we need express no opinion on it at present. (*Somers v. Somers*, 39 Kan., 132; *Sherwin v. Gaghagen*, and cases cited, 39 Neb., 238.)

It is urged by counsel for the appellee that the appeal from the branch of the case in respect to the property by the appellant presents the whole decree here and that the action of the trial court, in any and all particulars, is

open to examination and reversal or modification at the instance of either party to the cause, and further contends that there was not sufficient evidence to sustain the findings made, on which is based the decree of divorce in favor of appellant. Without discussion or decision of the presentation of this subject at this time, in an appeal which in terms was limited to one branch of the case by the party successful in the portion of the decree sought to be attacked by the opposing party, it will suffice to say that it has developed that the evidence is not all contained in the bill of exceptions, and hence the question of the sufficiency of the evidence to support the findings of the trial court is not open to consideration. It follows from the views hereinbefore expressed and the conclusions reached that the decree of the district court will be

<div align="right">AFFIRMED.</div>