Sohl v. Sohl.

ELIZABETH SOHL, APPELLEE, V. JOHN SOHL, APPELLANT.

FILED FEBRUARY 12, 1926.   No. 23611.

1. Appeal: INSTRUCTIONS. The practice of setting out pleadings at length in the charge to the jury, instead of a concise statement of the issues tried, disapproved. And where, in so doing, issues are submitted upon which there is no supporting evidence found in the record, it may constitute reversible error.

2. Damages: TORTS. In an action for damages for tort, compensatory damages can alone be recovered, and only such as are the probable, direct, and approximate consequences of the wrong complained of, and such as may be fairly supposed to have been in contemplation of the defendant at the time the cause of action arose.

3. Appeal: INSTRUCTIONS: LOSS OF SUPPORT. Where loss of support is alleged by a wife as an element of damages, in an action brought by her for alienation of her husband's affections, the failure of the district court in its instructions to the jury to limit the recovery on this ground, if there was such loss, to an award of such damages as would fairly compensate the wife for the loss of her husband's support, except to the extent that he has contributed, or may, by law, be compelled to contribute to her support and to the support of her minor children, held, reversible error.

APPEAL from the district court for Saunders county: LOVEL S. HASTINGS, JUDGE. *Reversed.*

*Hainer & Flansburg* and *Slama & Donato,* for appellant.

*J. C. Cook, J. H. Barry* and *John Gumb, Jr., contra.*

Heard before MORRISSEY, C. J., DAY, GOOD, THOMPSON and EBERLY, JJ.

EBERLY, J.

This is an action brought by the plaintiff below against the defendant, her father-in-law, for alienating the affections of her husband, Ezra. Trial was had to a jury, which resulted in a verdict and judgment for the plaintiff in the sum of $12,500, from which judgment, and denial of defendant's motion for a new trial, defendant has appealed.

Without attempting an exhaustive analysis of the testimony contained in the record, it may be said that the plaintiff married Ezra Sohl, son of the defendant, at Fremont, Nebraska, March 4, 1908. Three male children now living are the fruit of this marriage, whose ages, respectively, at the time of the commencement of this action, were 12, 10, and 8 years. After the marriage plaintiff and her husband lived on a rented farm near Ithaca, Nebraska. In 1912 they removed to the farm then and now owned by the defendant, situated near Cedar Bluffs, Nebraska, where they continued to live until the separation of the plaintiff from her husband in April, 1922. At the time of the marriage and for some years subsequent there was no controversy whatever between plaintiff and defendant. During that time the defendant contributed, by what was tantamount to gifts, the sum of $3,500 to plaintiff's husband for the benefit of the family. After leaving the farm in 1912, subsequently occupied by plaintiff and her husband, the defendant spent a year and ten months in Canada, and then removed his home to California, where he resided until September, 1921. In 1914 and 1918 the defendant visited the home of plaintiff in

Nebraska. No complaints of the plaintiff are based upon any events which transpired on either of these occasions. It may be said in passing, however, that testimony in the record discloses that at the time of the visit in 1918 the plaintiff complainingly stated to defendant that she and her husband were not getting along well. The defendant at that time replied, suggesting that she should not talk so much and plaintiff and her husband would get along better. There is no testimony in the record which in any manner denies the evidence of the defendant that in June or July, 1921, the defendant in California received a letter from his son, Ezra, stating that the son would not continue to farm the place he then occupied. The receipt of this letter, it appears, resulted in the defendant's coming to Nebraska. On his arrival at his farm in Nebraska in September, 1921, which had been continuously occupied by plaintiff and her husband, the record discloses that defendant found the improvements thereon in badly "run-down condition;" that the farm had been allowed to grow up in weeds; that the buildings, in particular, were badly in need of repairs; that corn was standing in the field unharvested; and that his son refused to make any preparation for, or take any part in, putting in a new crop, and, in fact, did very little personally for caring for the matured crop then in the field.

It may also be fairly said that the defendant found that his son had "nothing but debts," notwithstanding the gifts which his father had previously made him. True, the plaintiff in her testimony speaks of certain personal property possessed by her husband, but it is to be remembered that she expressly denies knowledge as to the condition of its title being incumbered or not.

For the first three or four weeks after the arrival of the defendant at the home of the plaintiff and her husband, beyond the charge that his conduct was "cool" toward the plaintiff, no allegations are made against him. He proceeded to repair the improvements on the place, and with the assistance of men, provided by his son, harvested the

matured crop in the field.   They also destroyed the weeds
which had been permitted to grow upon the premises.
While the dates are not definitely fixed, it also appears
that, in addition to the work which the defendant per-
formed in the fields, he assisted the plaintiff from time
to time in her household duties by helping in the washing
of dishes, as well as occasionally assisting in doing the
family washing.   What transpired after the first three or
four weeks of defendant's visit is a matter of disputed
evidence.   An analysis of the claims of the plaintiff, as
reflected in the evidence, discloses that her statements
in substance are that the defendant then insisted on a
divorce and separation of plaintiff and her husband; that
at least on one occasion the defendant stated, in the pres-
ence of plaintiff and her husband, that the plaintiff was
of a "jealous disposition, always scolding about this and
that;" that the defendant, many times, advised and con-
tinued to insist on a divorce and separation of plaintiff
and her husband; that plaintiff's father was also brought
in for a conference, and these statements were reiterated
to him; that finally the defendant insisted that his son's
wife leave the premises she and her husband occupied,
stating that, if they would separate, the son could stay,
but the wife must go.   In the month of March, 1922, a
statutory notice to vacate the premises, occupied by the
son and his family, was served upon the son by the father.
The plaintiff thereupon left her husband's home and pro-
ceeded to Fremont, Nebraska, where she sought and found
employment.

It may be said in passing that no attack was alleged
to have been made on plaintiff's moral character by the
defendant, unless the statement, which defendant denies,
to the effect that plaintiff had lied under oath.   While
the briefs contain statements as to divorce proceedings
and a judgment of divorce, there is no evidence whatever
in the record which in any manner substantiates the state-
ment as to a decree of divorce having been entered.

The theory of the plaintiff, reflected in her evidence, is

that the affections of her husband were influenced and alienated by, through, and because of the attitude of the defendant and his continued insistence that there must be a divorce and separation between plaintiff and her husband. There is an admission by plaintiff that from time to time, and for many years, spats and altercations had frequently taken place between plaintiff and her husband, but she insists that they were unimportant in character and only temporary in their duration, and only such as ordinarily occur between man and wife, and not of a serious character. There is, however, evidence in the record by disinterested witnesses that the plaintiff stated and admitted to them, prior to the separation and prior to the coming of the defendant to the state of Nebraska, that she was unhappy in her marital relations. And it appears on one occasion that plaintiff secured six or more drygoods boxes in which to pack and remove her household property from the home of her husband, all of which occurred prior to the arrival of the defendant in 1921. But as to the exact reason which induced this conduct, there is a dispute in the evidence. It also appears in the evidence that there was paid to the plaintiff by, or in behalf of, her husband, and after she left her husband's home, the sum of $50 monthly, and for at least one month the payments amounted to $75. However, the evidence is very indefinite as to the number of monthly payments made. At the trial, the court, at the close of the evidence, gave a comprehensive instruction reciting practically verbatim all of the allegations contained in the petition, the answer, and the reply, upon which the case was tried. This instruction covers four typewritten pages. Instruction No. 4 is to the effect "that the burden is upon the plaintiff to prove, by a preponderance of the evidence, each and every material allegation of her petition," and nowhere in the instruction is the jury advised as to what the material allegations contained in the pleadings are. This practice has been uniformly and consistently condemned by this court.

In addition to this, many of the allegations in the petition thus recited and submitted as a basis of recovery are wholly unsupported by the evidence in the record, and in some cases wholly disproved by the evidence. In addition to this, it is set forth in instruction No. 1, as one of the grounds for recovery claimed by plaintiff, "that when plaintiff left her home she was practically without means to support herself and said minor children; * * * that during all of the times aforesaid the husband of said plaintiff was under the undue influence of said defendant, and that the acts of cruelty committed by plaintiff's husband, as herein set forth, were at the suggestion and insistence of said defendant, and while said husband was under the influence and control of said defendant; that by reason of all the same (including failure of her husband to support herself and children) plaintiff has been deprived of the affection, society, comfort and companionship of her said husband; that they have become estranged, and plaintiff has suffered great humiliation, mental anguish, and physical pain, and been deprived of the support of her said husband; * * * by reason of the same plaintiff has suffered damages in the sum of $25,000." Plaintiff's own evidence with reference to support, in substance, is that her husband is a strong, able-bodied man competent to earn wages and furnish adequate support. It appears that the husband was within the jurisdiction of the district court at the time of the trial in the court below. The undisputed evidence of the defendant elicited on cross-examination is that the plaintiff's husband is a big, husky individual, a good, strong man, and a good worker, and also able to take care of the three boys and properly support and care for them. So there is no question but that the evidence in the record reflects the fact that the son was amply able to support his wife, the plaintiff, and there is no reason why this duty cannot be compelled. In fact, while there is no evidence in the record disclosing a divorce granted, or an alimony judgment entered, it does appear that the plaintiff received from her husband, after

the separation, $50 monthly for a number of months, the exact number being indefinite, and $75 was paid for at least one month toward the support of herself and children.

Conceding that, under the facts and circumstances in this case, the plaintiff is entitled to support and maintenance suitable to her station in life, not only for herself but for her children as well, and conceding that this right to support was a continuing right, it must also be conceded that the husband is primarily liable for the support, and her right of support appears unquestionably enforceable against her husband, notwithstanding the separation which had taken place. This being true, how can it be said in any view of the evidence that the action of the defendant, assuming everything testified to by plaintiff to be unquestioned (which is not the case), in any way interfered with, affected, or diminished her enforceable rights of support against her husband? If this fact be admitted, the loss of support, which was not loss in fact or in law, cannot be considered as an element in plaintiff's recovery.

It must be remembered, with reference to the term "support," thus used, that its meaning has been clearly defined by this court in proceedings relating to alimony, in which it was said:

"Support may be defined to be such sum as is ordered by the court to be paid to the wife by the husband for her support during the time she lives separate from him, or to be paid her by her late husband for her maintenance after divorce from the marriage tie." *Greene v. Greene*, 49 Neb. 546.

In *Hope v. Twarling*, 111 Neb. 793, the action of the district court, which, by a preliminary order, sustained a motion to strike from the answer of the defendant the allegation that a decree of divorce granted the plaintiff $4,000 permanent alimony, was approved. The court stated as a reason: "The duty of a husband to pay for the support of a wife whose conjugal rights were destroyed by him without cause, as 'alimony,' is defined in *Greene v. Greene*,

49 Neb. 546, is not the same as the liability of a third person to respond in damages for alienating his affections."

It may be said in passing that, while the plaintiff's petition in district court in *Hope v. Twarling, supra,* set forth as grounds for recovery that the plaintiff has been deprived of the comfort, society, *support,* love, and protection of Arthur C. Twarling, as shown in the transcript, the district judge in his instructions to the jury limited the recovery to the loss of "comfort, society, love and protection" of her husband, thus expressly eliminating from the jury's consideration the element of "support." It is conceived that this is a proper practice and a correct expression of the general rule that should be ordinarily applied in alienation cases. In this case last referred to, the court also cites approvingly 30 C. J. 1123, sec. 977:

"The basis or gravamen of the husband's right of action (for alienation of affections) is not the loss of his wife's services, but rather the loss of her conjugal society or consortium. Like the husband's, the wife's right of action for alienation of the affections of her spouse rests, upon the loss of his consortium."

The language of the opinion in *Hope v. Twarling, supra,* implies that this court adopted the modern definition of the term "consortium" which limits it to a right growing out of the marriage relations which the husband and wife have, respectively, to the society, companionship, and affections of each other in their life together. By this modern definition it is clearly intended to distinguish the right of consortium from that to service in the case of the wife, and to support in the case of the husband. Assuming, though not deciding, that this does not eliminate the possibility of a recovery for loss of support in a proper case as an incident to an action for alienation of affections, it would seem essential to such recovery that it must affirmatively appear that, by reason of the wrongful acts of the defendant, the enforcement of this primary right of support and maintenance, vested in the wife, for herself and

Sohl v. Sohl.

children, has been impaired or rendered impossible. And in such case, in the light of the assumption heretofore made, if a recovery for loss of support be permitted, it would be limited to the extent which, by the acts of the defendant, the wife's enforceable right of support against her husband had been impaired or rendered impossible of enforcement. On this basis, if the plaintiff is entitled to any support whatsoever from the defendant in this case, it would be a limited and conditional right for the violation of which she would be entitled to an award of such damages by the jury as would fairly compensate her for the exact injury occasioned by the acts of the defendant, viz.: An award of such damages as would fairly compensate her for the loss of her husband's support, if there was such loss, except to the extent that her husband had contributed or may, by law, be compelled to contribute to her support. *Scott v. O'Brien,* 129 Ky. 1; *Stocker v. Stocker,* 112 Neb. 565.

It is to be observed that the language of instruction No. 1, as given to the jury in the instant case, authorized the jury to return a verdict irrespective and without reference to the amounts which had been contributed by plaintiff's husband to her support, or which the plaintiff's husband may be compelled to contribute. This, manifestly, was erroneous. It must be remembered that the doctrine of damages in Nebraska is based upon the idea of compensation only. Punitive damages are not permitted. Neither may there be a recovery for a tort in excess of the amount of the actual damage suffered. *Karbach v. Fogel,* 63 Neb. 601.

Under the instructions of the court, it would follow, in the light of the record, that, no matter how much the plaintiff had received from her husband for the maintenance of herself and children, the item of "support," as defined in the language of the cases of this court pertaining to the subject of alimony, could again be recovered from the defendant in this case. This position is wholly inconsistent with the theory of this court as controlling the rights of

litigants in tort actions limiting the total recovery to actual compensation for damages suffered. In view of the size of the recovery in this case, the conclusion necessarily follows that this error contributed to the result.

It follows, therefore, that in submitting the issues in this case to the jury the district court committed error which necessitates a retrial of this action. The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

Note—See Damages, 17 C. J. pp. 729 n. 11, 733 n. 12, 751 n. 30, 868 n. 51, 969 n. 73.