JAYNE STEELE AND MARY STEELE, SUCCESSOR COPERSONAL
REPRESENTATIVES OF THE ESTATE OF CHARLES E. STEELE II,
DECEASED, APPELLANTS AND CROSS-APPELLEES, V.
RITA C. SEDLACEK, PERSONAL REPRESENTATIVE
OF THE ESTATE OF LISA M. SEDLACEK, DECEASED,
APPELLEE AND CROSS-APPELLANT.

673 N.W.2d 1

Filed November 21, 2003.   No. S-02-857.

(1)

Vincent Valentino, of Angle, Murphy, Valentino & Campbell, P.C., for appellants.

Michael F. Coyle and Russell A. Westerhold, of Fraser, Stryker, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

This wrongful death action is before this court for a second time. In *Steele v. Sedlacek*, 261 Neb. 794, 626 N.W.2d 224 (2001), *modified* 262 Neb. 1, 626 N.W.2d 224, we reversed the decision of the Nebraska Court of Appeals, which had affirmed the trial court's denial of a motion for directed verdict. We remanded with directions to enter a directed verdict in favor of the estate of Charles E. Steele II on the issue of liability and to conduct a new trial on the issue of damages only. On remand, judgment was entered in favor of Charles' estate in the amount of $17,856.61.

## SCOPE OF REVIEW

When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Andersen v. A.M.W., Inc.*, 266 Neb. 238, 665 N.W.2d 1 (2003).

## FACTS

Charles' estate filed a wrongful death action against the estate of Lisa M. Sedlacek after Charles and Lisa were killed in

September 1995 in a one-car accident near Rapid City, South Dakota. There were no eyewitnesses, but the physical evidence supported a finding that Lisa was driving at the time of the accident. The action was filed under South Dakota law in the district court for Douglas County, Nebraska. Charles' estate appealed following the jury's verdict for Lisa's estate, and the Court of Appeals affirmed. See *Steele v. Sedlacek*, No. A-99-760, 2000 WL 1207150 (Neb. App. Aug. 22, 2000) (not designated for permanent publication). This court's reversal was entered after we granted a petition for further review filed by Charles' estate.

On further review, we concluded that "reasonable minds could not differ and could draw but one conclusion—the cause of the accident was Lisa's failing to maintain a proper lookout, failing to maintain proper control of her vehicle, and driving at an excessive speed for the conditions then and there existing." *Steele*, 261 Neb. at 799, 626 N.W.2d at 228. We held that the trial court erred in failing to sustain the motion for directed verdict by Charles' estate on the issue of liability and that the Court of Appeals erred in affirming the decision of the trial court. We reversed the decision of the Court of Appeals and directed that court to remand the cause to the trial court with directions to enter a directed verdict in favor of Charles' estate on the issue of liability and conduct a new trial on the issue of damages only.

At the retrial, evidence was received concerning Charles' three surviving children: Charles Michael Matthew Steele, born October 1, 1992, to Charles and Jayne Steele (who were married from December 1991 to December 1994); Alisha K. Lavender, born April 3, 1992, whose mother is Renee L. Lavender (who was never married to Charles); and Jessica Jayne Schaecher, born June 23, 1990, whose mother is Kari Schaecher (who also was never married to Charles). Evidence was also presented concerning Charles' involvement with the children.

After Charles and Jayne Steele divorced, she moved to Massachusetts with their son. Charles had contact with the son by letter and telephone, but the son did not see Charles again before Charles' death. Charles had been ordered to pay $50 per month in child support, but Jayne Steele testified that he did not provide any child support.

Charles' paternity of Alisha Lavender was established after the State instituted a paternity action against him in 1992. The district court for Nance County, Nebraska, issued an order finding Charles to be Alisha Lavender's father in October 1994, and Charles was ordered to pay child support of $25 per month. Renee Lavender testified that Charles had no relationship with their daughter, other than one visit 2 weeks after she was born and a chance meeting in a mall. Renee Lavender stated that Charles gave her approximately $80 in cash, but he provided her no other monetary support for their daughter.

Kari Schaecher testified that Charles had no relationship with their daughter and that the only support he provided was to purchase a few items of clothing and some diapers. An order establishing Charles' paternity of Jessica Schaecher was entered in February 1998, following Charles' death.

The record indicates that although Charles was ordered to pay child support for two of the children in 1994, he had no taxable income during that year.

Charles' estate moved for directed verdict on the issue of causation of the damages sustained by his children. The motion was overruled, and the case was submitted to the jury. The jury returned a verdict for Charles' estate on the first cause of action, which sought damages for loss of support by Charles' children, in the amount of $11,734.91. The trial court entered judgment in that amount on the first cause of action. The court also entered judgment as a matter of law on the second cause of action, which sought funeral expenses, in the amount of $9,121.70, for a total judgment of $20,856.61.

Charles' estate filed motions for judgment notwithstanding the verdict, for new trial, and for additur. These motions were overruled. Lisa's estate filed a motion for setoff or credit, which the trial court granted pursuant to Neb. Rev. Stat. § 25-1222.01 (Reissue 1995), and the court deducted $3,000 from the judgment. A final judgment was entered in the amount of $17,856.61. Charles' estate appeals, and Lisa's estate cross-appeals.

## ASSIGNMENTS OF ERROR

Restated, the assignments of error made by Charles' estate are as follows: (1) The trial court erred in submitting the issue of

causation to the jury, in giving the jury a verdict form allowing the jury to find in favor of Lisa's estate, and in failing to follow the law of the case on retrial; (2) the trial court erred in refusing to give jury instructions Nos. 2, 10, 12, and 13 proposed by Charles' estate; (3) the trial court erred in failing to grant motions for directed verdict made by Charles' estate, as well as its motions for judgment notwithstanding the verdict, for new trial, and for additur, and in failing to receive an affidavit in support of the posttrial motions; (4) the trial court erred in failing to sustain objections to and to order a new trial on the following grounds: (a) misconduct of Lisa's estate in presenting irrelevant and prejudicial evidence and improper argument; (b) receipt of a photograph of Lisa and Charles in an embrace; and (c) admission of irrelevant and prejudicial evidence, testimony, or argument regarding (i) Charles' lack of financial assets, as represented by an affidavit from an irrelevant proceeding; (ii) collateral sources of welfare payments for the benefit of the children in lieu of child support payments made; (iii) the filing of a paternity action after Charles' death; and (iv) the personal history of Lisa and her parents; and (5) allowing a $3,000 setoff or credit against the verdict in favor of Lisa's estate when it was never pled or set forth in the pretrial order as an issue at trial.

On cross-appeal, Lisa's estate asserts that the trial court abused its discretion in sustaining objections by Charles' estate to evidence of his incarceration and alleged alcoholism, which are probative and relevant to the issues in the case.

## ANALYSIS

### PROXIMATE CAUSE

Charles' estate first argues that the trial court erred in submitting the issue of causation to the jury because this court remanded for a trial on the issue of damages only. Charles' estate also argues that the trial court erred in providing the jury with a verdict form allowing the jury to find in favor of Lisa's estate.

During opening statements at the second trial, counsel for Lisa's estate said that the issue in the lawsuit could be stated in two words: "[p]roximate cause." The trial court overruled Charles' estate's objection. At the conclusion of the opening statement by counsel for Lisa's estate, Charles' estate moved for a mistrial

because the court had allowed Lisa's estate to present a legal argument attempting to predetermine or relitigate proximate cause. The motion for mistrial was also overruled. The court stated: "This issue was taken up prior in a motion in limine and the Court has ruled that proximate cause of the negligence issue is not in this case. But the issue of cause and the damages are in this case so I'm going to overrule the motion."

Whether the trial court erred in failing to conduct the retrial as directed by this court is a question of law, and when reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. See *Andersen v. A.M.W., Inc.*, 266 Neb. 238, 665 N.W.2d 1 (2003).

Lisa's estate asserts that the issue of causation is implicit in determining damages because proximate cause is necessary to determine which, if any, of the damages claimed by Charles' estate were caused by the negligence of Lisa as previously determined by this court.

■ We have often held that in a negligence action, a plaintiff must establish a duty of the defendant not to injure the plaintiff, a breach of that duty, proximate causation, and damages. See *Hausman v. Cowen*, 257 Neb. 852, 601 N.W.2d 547 (1999).

Lisa's estate relies on this court's holding in *Ketteler v. Daniel*, 251 Neb. 287, 556 N.W.2d 623 (1996), in which we stated that a defendant is liable for all damages which result from his negligent acts. That case concerned whether the defendant could be held liable for damages resulting from aggravation of a preexisting condition. Lisa's estate also cites to *J.D. Warehouse v. Lutz & Co.*, 263 Neb. 189, 195, 639 N.W.2d 88, 92-93 (2002), a professional negligence action, in which the court stated:

> The principle underlying allowance of damages is to place the injured party in the same position, so far as money can do it, as he or she would have been had there been no injury or breach of duty, that is, to compensate for the injury actually sustained. . . . Damages, like any other element of a plaintiff's cause of action, must be pled and proved, and the burden is on the plaintiff to offer evidence sufficient to prove the plaintiff's alleged damages.

(Citation omitted.)

In earlier cases, this court stated that a jury may award only those damages which are "the probable, direct, and [proximate] consequences of the wrong complained of." (Syllabus of the court.) See *Sohl v. Sohl*, 114 Neb. 353, 207 N.W. 669 (1926). In *Schwarting v. Ogram*, 123 Neb. 76, 242 N.W. 273 (1932), the syllabus of the court stated: "Damages for permanent injuries cannot be based upon mere speculation, probability, or uncertainty, but must be based upon competent evidence that permanent damages, clearly shown, are reasonably certain as a *proximate result* of the injury." (Emphasis supplied.)

In a more recent case, this court reversed, and remanded "for retrial on the issue only of the amount of damages *proximately caused* by the defendants' negligence." (Emphasis supplied.) *Stanek v. Swierczek*, 209 Neb. 357, 358, 307 N.W.2d 807, 809 (1981). In another case, the judgment was reversed and the cause remanded "for a new trial with directions that the defendants, as a matter of law, were guilty of negligence *proximately causing* the accident, and that the sole issue for retrial is one of damages and injuries *proximately caused* by the accident." (Emphasis supplied.) *White v. Kluge*, 189 Neb. 742, 746, 204 N.W.2d 789, 793 (1973).

Here, the issue on retrial was the monetary loss incurred by Charles' estate resulting from the negligence of Lisa. The trial court instructed the jury that it had been determined as a matter of law that Lisa was negligent in the operation of her vehicle at the time of the accident and that her negligence was the proximate cause of the accident. The court informed the jury that the claim of Charles' estate was that his next of kin were damaged as a result of Lisa's negligence and that there were two separate causes of action seeking damages. The first cause of action claimed that Charles' three children sustained certain damages by way of loss of support, love, affection, care, comfort, and companionship. The second cause of action sought funeral expenses as damages. The court entered judgment as a matter of law with regard to the funeral expenses in the amount of $9,121.70. The jury was then instructed that as to the claim of Charles' estate on the first cause of action, the burden was upon the estate to prove by a preponderance of the evidence "1. That the September 25, 1995 collision was a proximate cause of some

damage to the Plaintiffs; and 2. The nature, extent, and amount of these damages."

Having been instructed that Lisa's negligence was the proximate cause of the accident, the jury was properly instructed that it must determine whether the accident was a proximate cause of any damage to Charles' estate. We find no merit to the claim of error on this issue by Charles' estate.

### JURY INSTRUCTIONS

Charles' estate assigns as error the trial court's refusal to give its proposed jury instructions Nos. 2, 10, 12, and 13. The portion of instruction No. 2 at issue concerns the burden of proof. Charles' estate offered the following as its suggested instruction: "Before the Plaintiff can recover damages against the Defendant in this action, the burden is upon the Plaintiffs to prove by a preponderance of the evidence: 1. The nature, extent and amount of the damages sustained by the Plaintiff."

Instruction No. 2 as given by the trial court was similar to Charles' estate's proposed instruction No. 2, except that the instruction given added the requirement that Charles' estate had the burden to prove that "the September 25, 1995 collision was a proximate cause of some damage to the Plaintiffs." The trial court's instruction went on to state: "If the Plaintiffs have not met their burden of proof, then your verdict must be for the Defendant. On the other hand, if the Plaintiffs have met their burden of proof, then you must enter a verdict for the Plaintiffs."

Instruction No. 10 proposed by Charles' estate described what the jury could consider in the way of pecuniary benefits in determining damages. Instruction No. 12 given by the trial court was similar to proposed instruction No. 10. Charles' estate did not object to instructions Nos. 2 and 12 given by the court. Failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error. *Olson v. Sherrerd*, 266 Neb. 207, 663 N.W.2d 617 (2003). The purpose of the instruction conference is to give the trial court an opportunity to correct any errors being made by it. *Id.* It is not error to refuse to give a requested instruction if the substance of the request is in the instructions actually given. *Carnes v. Weesner*, 229 Neb. 641, 428 N.W.2d 493 (1988). The

claims made by Charles' estate as to instructions Nos. 2 and 10 have no merit.

Charles' estate also complains of the trial court's refusal to give its proposed jury instructions Nos. 12 and 13, which addressed child support for children born out of wedlock and the Nebraska Child Support Guidelines. Proposed instruction No. 12 stated:

> With respect to any child born out of wedlock, an out-of-wedlock child has the statutory right to be supported to the same extent and in the same manner as a child born in lawful wedlock. The requirement of child support begins at the time of the birth of the child, whether the child is born in lawful wedlock or otherwise. The earning capacity of the noncustodial parent may be considered in setting the support obligation for any parent owing a duty of support for any child whether born in wedlock or out-of-wedlock.

Instruction No. 13 given by the trial court stated:

> Nebraska law provides in pertinent part as follows:
>
> **43-1402. Child support; liability of parents.** The father of a child whose paternity is established either by judicial proceedings or by acknowledgment as hereinafter provided shall be liable for its support to the same extent and in the same manner as the father of a child born in lawful wedlock is liable for its support.
>
> . . . .
>
> **43-1410. Child support; decree or approved settlement; effect after death of parent.** Any judicially approved settlement or order of support made by a court having jurisdiction in the premises shall be binding on the legal representatives of the father or mother in the event of his or her death, to the same extent as other contractual obligations and judicial judgments or decrees.

Charles' estate did not object to instruction No. 13 given by the trial court, and for the same reasons as stated above, we find no merit to the claim of Charles' estate as to his proposed instruction No. 12.

As to Charles' estate's proposed instruction No. 13, which contained sections of the Nebraska Child Support Guidelines, we conclude the trial court did not err in refusing to give this instruction. In instruction No. 12, the court set forth the elements of

pecuniary loss that the jury could consider in determining the amount of damages. This claim of error has no merit.

### MOTIONS FOR DIRECTED VERDICT, JUDGMENT NOTWITHSTANDING VERDICT, NEW TRIAL, AND ADDITUR

Charles' estate objects to the trial court's refusal to grant its motions for directed verdict and its posttrial motions, which sought to set aside the verdict as being inadequate. In its brief, Charles' estate argues these assigned errors collectively as a failure to set aside the verdict.

A civil verdict will not be set aside where evidence is in conflict or where reasonable minds may reach different conclusions or inferences, as it is within the jury's province to decide issues of fact. *Fales v. Norine,* 263 Neb. 932, 644 N.W.2d 513 (2002). A jury verdict will not be set aside unless clearly wrong. *Id.* On the record before us, we cannot say the verdict was clearly wrong.

Charles' estate also asserts that the trial court erred in failing to receive an affidavit which was offered in support of the motion for new trial. The affidavit was from counsel for Charles' estate, stating that he had spoken with one of the jurors, who advised him as to the method used by the jury to reach the verdict amount. Lisa's estate objected to receipt of the affidavit on grounds of foundation, hearsay, and relevancy. The court sustained the objection as to hearsay and relevancy, noting that the affidavit was offered to impeach a jury verdict.

The first part of the affidavit stated that some of the jurors were concerned because Lisa's parents might have to pay any amount awarded. During deliberations, the jury sent the following question to the trial court: "Will the settlement that is decided upon be taken solely from the estate of Lisa M. Sedlacek or can some other party be liable to be responsible for that settlement? [i.e.,] will it fall to the parent's [sic] estate?" The court responded: "The only issues you are to decide are set forth in the Instructions. Please re-read the Instructions and continue your deliberations." The second part of the affidavit stated that nothing had been awarded for the claim of Jessica Schaecher because she did not seek a paternity order until after Charles' death. The jury used the court-ordered payments of $50 per month for Charles Michael

Matthew Steele and the court-ordered payments of $25 per month for Alisha Lavender and applied a discount rate to reach a present value figure.

The use of juror affidavits is governed by Neb. Rev. Stat. § 27-606(2) (Reissue 1995), which states:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him indicating an effect of this kind be received for these purposes.

Charles' estate seeks to have this court find that the jury considered extraneous prejudicial information when, during deliberations, it asked whether Lisa's parents could be held responsible for the verdict. As noted above, the jury was directed to decide only the issues set forth in the instructions it had previously received.

The trial court did not abuse its discretion in refusing to receive the affidavit of counsel. No extraneous prejudicial information was brought to the jury's attention. The information contained in the affidavit was intended to address the jury's thought process in determining the verdict, and the attempt to set forth the jury's thought process in arriving at the verdict was properly refused. We find no error in the trial court's denial of the motions for directed verdict or the posttrial motions.

## ADMISSION OF EVIDENCE

Charles' estate also raises objections to the trial court's rulings on several evidentiary matters. First, it asserts that the court erred in failing to sustain objections to misconduct of Lisa's estate in presenting irrelevant and prejudicial evidence and improper argument, including the submission of a photograph of Charles and Lisa in an embrace. Charles' estate objected to the

photograph because it may have shown that Lisa was pregnant and it demonstrated the different ethnicity of the parties. Lisa's estate asserted that the photograph was "important to my client." The photograph was admitted.

The admission or rejection of photographs in evidence is largely within the discretion of the trial court. In the absence of a showing of an abuse of discretion, error may not be predicated upon such a ruling. *Maricle v. Spiegel,* 213 Neb. 223, 329 N.W.2d 80 (1983). Other photographs of Charles and his children were offered by Charles' estate and admitted into evidence. The trial court did not abuse its discretion in admitting the photograph of Charles and Lisa.

Charles' estate also objects to the trial court's allowing evidence concerning his lack of financial assets, as demonstrated in an affidavit from an irrelevant proceeding. The court admitted, over objection, redacted versions of two financial affidavits signed by Charles in 1992 and 1993. The affidavits were apparently signed in connection with a criminal or paternity action. Charles' estate argues that the affidavits were intended to disparage Charles as a criminal with no assets.

As redacted and presented to the jury, the affidavits do not indicate that they arose from a criminal or paternity action. The admission of the affidavits was not an abuse of discretion.

Charles' estate also objects to the admission of testimony concerning collateral sources of welfare payments for the benefit of the children in lieu of child support payments made. Charles' estate argues that the questioning of Dan Redler, a legal program specialist for the Department of Health and Human Services child support enforcement division, was intended to demonstrate that Charles' children were "'welfare children'" and "therefore less deserving of support through the verdict." See brief for appellant at 32.

Redler was presented as a witness for Charles' estate. On cross-examination, Lisa's estate asked whether, in a case where child support has been assigned to the state, the money goes to the state agency. Charles' estate objected, and the trial court overruled the objection after Lisa's estate indicated that it was following up on the information presented during direct examination as to the party who owns the child support claim.

■ Charles' estate asserts that this questioning violates the collateral source rule, which provides: "[T]he fact that the party seeking recovery has been wholly or partially indemnified for a loss by insurance or otherwise generally cannot be set up by the wrongdoer in mitigation of damages." See *Mahoney v. Nebraska Methodist Hosp.*, 251 Neb. 841, 847, 560 N.W.2d 451, 456 (1997).

During direct examination, Redler was asked whether a child support enforcement action belongs to the child, and Redler responded that "[t]he child support follows the child." An objection by Lisa's estate was overruled. The remainder of the direct examination included an explanation of various enforcement mechanisms used by the State. On cross-examination, Redler stated that he was not testifying about Charles and was not familiar with the facts of the case, but was providing an overview of remedies and vehicles used to collect child support.

■ When Redler was asked about the assignment of rights for child support, he stated that as a general procedure, there can be an assignment of rights of support to the State if it has expended funds on behalf of a child through aid to dependent children or Medicaid. After Charles' estate objected and a sidebar conference was held, the trial court sustained a motion by Charles' estate to strike the last answer, and the jury was instructed to disregard it. Assuming for the sake of argument that the testimony was inadmissible, this court has held that when the trial court grants a motion to strike testimony and the jury is admonished to disregard it, ordinarily, any error is thereby considered cured. *State v. Jackson*, 231 Neb. 207, 435 N.W.2d 893 (1989). This alleged error has no merit.

Next, Charles' estate objects to the trial court's admission of evidence concerning the filing of a paternity action after Charles' death. Lisa's estate presented evidence by way of a deposition from Kari Schaecher, who testified that she gave birth to Jessica Schaecher on June 23, 1990, and that Charles was the father and was aware of the child. Kari Schaecher testified that Charles' paternity was established in February 1998 and that she began the paternity proceedings after Charles' death. Charles' estate offered the order establishing paternity, and it was received into evidence without objection.

During closing argument, Lisa's estate suggested that it required speculation, conjecture, and guess to determine whether Kari Schaecher would have sought to establish Charles' paternity of her daughter at any time in the future and that any pecuniary loss by Jessica Schaecher was based on conjecture. Charles' estate did not object during the closing argument. In order to preserve, as a ground of appeal, an opponent's misconduct during closing argument, the aggrieved party must have objected to the improper remarks no later than at the conclusion of the argument. *Wolfe v. Abraham*, 244 Neb. 337, 506 N.W.2d 692 (1993). Any complaint about this issue has been waived.

The final complaint of Charles' estate concerning evidence relates to testimony provided by Lisa's mother, Rita C. Sedlacek. Rita Sedlacek testified that Lisa attended Catholic school in Omaha and, after high school graduation, worked for the Omaha Public Power District, where she met Charles, who worked in the cafeteria. Charles' estate requested and was granted a continuing objection to the testimony. It argues here that the testimony was irrelevant to the issue of damages to be awarded to Charles' next of kin. We conclude there was no prejudicial error in the admission of this evidence.

In addition, Charles' estate complains because Rita Sedlacek was allowed to testify that she and her husband had been married 35 years and to testify concerning their employment. Charles' estate waived any complaint concerning this information by failing to object when the testimony was offered. Failure to make a timely objection waives the right to assert prejudicial error on appeal. *In re Interest of Phyllisa B.*, 265 Neb. 53, 654 N.W.2d 738 (2002). There is no merit to the assigned errors concerning the admission of this evidence because Charles' estate waived them by failing to properly object at trial.

### SETOFF AGAINST VERDICT

The final assignment of error by Charles' estate asserts that the trial court erred in allowing a $3,000 setoff or credit against the verdict in favor of Lisa's estate when it was never pled or set forth in the pretrial order as an issue at trial.

At a hearing following the verdict, Lisa's estate offered a copy of a check for $3,000 that had been sent to a funeral home

in Grand Island, Nebraska, and Lisa's estate requested a credit on the judgment in that amount. The check was paid by State Farm Mutual Automobile Insurance Company and indicated Lisa as the insured. Charles' estate objected to the exhibit on the basis of foundation and hearsay. The trial court sustained the objection and granted leave to submit further evidence. After receiving an affidavit in support of the exhibit, the court issued a written order in which it sustained the motion pursuant to § 25-1222.01 and deducted $3,000 from the judgment.

Section 25-1222.01 provides:

> No advance payments or partial payment of damages made by an insurance company or other person, firm, trust, or corporation as an accommodation to an injured person or on his behalf to others or to the heirs at law or dependents of a deceased person made under any liability insurance policy, or other voluntary payments made because of an injury, death claim, property loss, or potential claim against any insured or other person, firm, trust, or corporation thereunder shall be construed as an admission of liability by the insured or other person, firm, trust, or corporation, or the payer's recognition of such liability, with respect to such injured or deceased person or with respect to any other claim arising from the same accident or event. Any such payments shall constitute a credit and be deductible from any final settlement made or judgment rendered with respect to such injured or deceased person. In the event of a trial involving such a claim, the fact that such payments have been made shall not be admissible in evidence or brought to the attention of the jury, and the matter of any credit to be deducted from a judgment shall be determined by the court in a separate hearing or upon the stipulation of the parties.

Charles' estate argues that the intention of § 25-1222.01 is to prohibit the use of payments by an insurance company to demonstrate an admission of liability. However, Charles' estate also suggests that Lisa's estate did not meet the procedural requirements then in effect. See Neb. Rev. Stat. §§ 25-811 and 25-812 (Reissue 1995). (Now found at Neb. Ct. R. of Pldg. in Civ. Actions 8 and 13 (rev. 2003).) Section 25-811 stated that any counterclaim or

setoff shall be contained in the answer, and § 25-812 stated that the defendant may set forth in the answer as many grounds of counterclaim and setoff as he may have.

Section 25-1222.01 provides that payments by an insurance company "shall constitute a credit and be deductible from any" final judgment. The $3,000 amount was paid by Lisa's automobile insurance company to the funeral home for expenses related to Charles' funeral. Charles' estate sought damages for funeral expenses via its second cause of action, and the trial court was correct in granting a credit against that amount for the payment by the insurance company.

We find no merit to any of Charles' estate's assignments of error.

### Cross-Appeal

On cross-appeal, Lisa's estate asserts that the trial court abused its discretion in sustaining Charles' estate's objections to evidence of his incarceration and alleged alcoholism, which are probative and relevant to the issues in the case. Lisa's estate argues that evidence of incarceration and alleged alcoholism is relevant to a consideration of the amount of support the children could have reasonably expected had Charles lived and to Charles' ability to earn wages.

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *Gourley v. Nebraska Methodist Health Sys.*, 265 Neb. 918, 663 N.W.2d 43 (2003).

Lisa's estate offered several documents in its attempt to suggest that Charles had little earning capacity. The trial court received the exhibits for purposes of the offer of proof and objection only. First, Lisa's estate offered an affidavit from Jayne Steele that was filed in the York County District Court in December 1993 as part of the dissolution proceedings between Jayne and Charles. In the affidavit, Jayne Steele alleged that Charles had a drinking problem, had threatened bodily harm to her, and had been in jail for 6 of the previous 9 years.

During the trial, portions of a deposition from Jayne Steele were read. In it, Jayne Steele admitted that her statements in the affidavit were not true. Charles had not mentally abused her or threatened her bodily harm, had not abandoned her and their son, and had not refused to purchase diapers and other necessities. Jayne Steele admitted that Charles supported her when she was not working. She specifically admitted that the affidavit was " 'full of lies' " and was intended to help her gain custody of their son.

This affidavit was not relevant to the question of any support Charles could have provided to his children had he lived. It was originally offered as part of a dissolution proceeding, and Jayne Steele admitted that it contained false statements. The trial court did not abuse its discretion in refusing to receive it into evidence.

Lisa's estate also offered a copy of a judgment and sentence from the York County District Court for a drug conviction, along with a letter from the Nebraska Department of Correctional Services which stated that Charles was sentenced on March 22, 1994, to a term of 2 to 20 years' imprisonment for the drug conviction. He was paroled on March 25, 1995. Charles' estate points out that during his imprisonment, he was on work release and his wages were garnished for child support.

Whether Charles would have been incarcerated in the future and unable to provide support for his children is purely speculative. No abuse of discretion can be found in the trial court's refusal to receive these documents.

Finally, Lisa's estate offered an abstract of Charles' driving record from the Nebraska Department of Motor Vehicles. Charles' estate points out that Neb. Rev. Stat. § 60-504 (Reissue 1998) provides that driving abstracts "shall not be admissible as evidence in any action for damages or criminal proceedings arising out of a motor vehicle accident."

This action for damages does not arise specifically out of a motor vehicle accident caused by Charles, although Charles' death was a result of a motor vehicle accident. However, Lisa was driving at the time of the accident, and her liability had previously been determined. Charles' driving record has no relevance to his ability to earn wages to support his children. The trial court did not abuse its discretion in refusing to admit this document.

We find that the trial court did not abuse its discretion in refusing to allow the jury to hear the proposed evidence concerning Charles' alleged drinking habits and his jail record. The cross-appeal has no merit.

## CONCLUSION
For the reasons set forth herein, we affirm the judgment of the trial court.

AFFIRMED.